## COMMONWEALTH *vs.* WILLIAM S. SIRES, JR.

Berkshire. April 8, 1992. - July 29, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Homicide. Malice. Practice, Criminal,* Instructions to jury, Capital case. *Intent. Intoxication. Evidence,* Expert opinion, Admissions and confessions, Verbal completeness.

At a murder trial, the judge's instructions to the jury making an erroneous distinction between malice in murder in the first degree and malice in murder in the second degree did not, in the circumstances, create a substantial likelihood of a miscarriage of justice. [295-298]

At a murder trial, the judge's omission of an instruction to the jury on their appropriate consideration of the effects of the consumption of alcohol on the defendant's knowledge or state of mind at the time of the alleged commission of the crime was not prejudicial to the defendant, where there was no jury issue concerning the effects of alcohol on what the defendant knew at the time he allegedly committed the crime. [298-300]

This court suggested that, at a criminal trial in which there is evidence of the effects of the consumption of drugs (including alcohol) that, if believed, would be relevant to a defendant's state of mind or knowledge at the time of the alleged commission of a crime, the jury be instructed that they may consider credible evidence of the effects of the defendant's consumption of drugs in deciding whether the Commonwealth had met its burden of proving the defendant's state of mind beyond a reasonable doubt. [300-301]

At a murder trial, the judge did not err by omitting an instruction that would have allowed the jury to return a verdict of guilty of manslaughter, where the evidence did not warrant the giving of such instruction. [301-303]

At the second trial of a murder case, the judge did not err in excluding the opinion of the defendant's expert that, on the morning following the victim's shooting, when the defendant made admissions amounting to a confession to police officers, the defendant's judgment and intellectual capacities were impaired as a result of his consumption of alcohol; moreover, even if the exclusion of the opinion was error, its omission was not prejudicial in light of the defendant's testimonial admissions at

his previous trial and his concession at the beginning of the retrial that he had shot the victim. [304-305]

At the second trial of a murder case, the judge did not err in excluding portions of the defendant's testimony at his first trial after the Commonwealth had introduced large parts of the defendant's first trial testimony given on cross-examination, where the judge, properly applying the rule of "verbal completeness," analyzed the defendant's prior testimony and concluded that the proffered testimony did not explain any admission the defendant made in his first trial testimony that the Commonwealth introduced, nor did it contradict any such admission. [305-306]

At the second trial of a murder case in which the judge denied the defendant a new evidentiary hearing on the question whether the defendant had voluntarily waived his rights under *Miranda* v. *Arizona*, 384 U.S. 436 (1966), and adopted the findings of the judge at the defendant's first trial, stating, without explanation, that they were made on the standard of proof beyond a reasonable doubt, there was no prejudicial error in not having such a hearing where, although the holding of a new hearing would have been preferable, the transcript of the first hearing offered as good a record as would the live testimony of the witnesses at a second hearing some seventeen years after the commission of the crime, and where the issue of voluntariness was substantially eliminated from the case by the introduction of the admissions the defendant had made at his first trial. [306-307]

INDICTMENT found and returned in the Superior Court on October 4, 1973.

Following the decision of this court in 405 Mass. 598 (1989), the case was tried before *William W. Simons,* J.

*Wendy Sibbison* for the defendant.

*Joel S. Fishman,* Special Assistant District Attorney, for the Commonwealth.

WILKINS, J. On September 5, 1973, the defendant fatally shot his mother while she was lying in bed. This court affirmed his conviction of murder in the first degree. *Commonwealth* v. *Sires,* 370 Mass. 541 (1976). Among other things, we rejected the defendant's argument that, because the trial judge did not suppress statements that the defendant had made to police officers, he was denied his rights under *Miranda* v. *Arizona,* 384 U.S. 436 (1966). *Commonwealth* v.

*Sires, supra* at 543-545. In 1989, this court ordered a new trial because we concluded that, based on intervening opinions of the Supreme Court of the United States, the judge's instruction impermissibly and prejudicially shifted the burden of proof to the defendant on the issue of criminal intent. *Commonwealth v. Sires*, 405 Mass. 598 (1989).

The defendant was tried again in 1990, and once more a jury found him guilty of murder in the first degree. We affirm the defendant's conviction.

At the second trial, defense counsel made an opening statement in which he admitted that the defendant had killed his mother and urged the jury to return a verdict of guilty of manslaughter. One issue in this case concerns the absence of a jury instruction on involuntary manslaughter. At the second trial, the prosecution's evidence in most respects was the same as that offered at the first trial. At the second trial, however, the defendant did not testify. As part of its case, the prosecution offered portions of the defendant's first trial testimony as admissions. Another issue on appeal concerns the judge's exclusion of portions of the defendant's first trial testimony that the defendant sought to introduce.

The thrust of the defense was that the defendant was under the influence of alcohol at the time of the killing and, therefore, could not have acted with deliberate premeditation or with a specific intent to kill or to cause grievous bodily harm. The defense did not focus on the absence of the third definition of malice (sometimes called the third prong of malice), which involves knowledge of such circumstances that, according to common experience, there is a plain and strong likelihood that death will follow the contemplated act. See *Commonwealth v. Catalina*, 407 Mass. 779, 788 (1990); *Commonwealth v. Grey*, 399 Mass. 469, 470 n.1 (1987); *Commonwealth v. Chance*, 174 Mass. 245, 252 (1899).[1]

---

[1] We shall deal with the judge's unique instruction (not requested by either side, nor seasonably objected to by the defendant) that the only form of malice that would warrant a guilty verdict of murder in the second degree is third prong malice. We shall also deal with the judge's instruction

The defendant did not request a specific instruction defining the crime of manslaughter of which the jury could find the defendant guilty. We conclude that an instruction on manslaughter was not warranted by the evidence. We have not, as the defendant argues, redefined the crime of involuntary manslaughter in recent opinions.

The evidence against the defendant was overwhelming. In addition to his admissions at his first trial, there was incriminating testimony of his sister who was in the family home at the time of the killing. She testified that the defendant said, "I told her I'd fix her, and, if you don't shut the hell up, I will fix you, too." The defendant's testimony, given at the first trial and read at the second, included his description of the shooting. He arrived at his family's home and discovered that his mother was in bed. He knocked on his mother's bedroom door. He offered the loaded gun to his mother, although he did not know it was loaded because he was drunk. She looked at the pistol and, according to the defendant, said, "Go ahead and pull the trigger." He pointed the gun intending to shoot above her, fired, and hit her. She said, "Again," and he fired again and hit her. He shot her a third time "[b]ecause if she wanted me to shoot her, then she must have wanted to be dead, and I didn't want her to live and be crippled or anything." He testified that he killed his mother because she asked him to pull the trigger. A medical examiner testified that each of the shots alone would have been fatal.

1. The judge told the jury that "the malice required to be proved for second degree murder is somewhat different from the malice necessary for first degree murder." He said that only the third prong of malice could support a conviction of murder in the second degree.[2] Neither the Commonwealth nor the defendant objected to the instruction at the conclu-

---

that the defendant's intoxication was not relevant to the proof of malice for the purposes of murder in the second degree.

[2]He said, in part: "[M]urder in the second degree malice [ ] may be inferred . . . upon proof beyond a reasonable doubt that, in the circumstances known to the defendant, a reasonably prudent person would have

sion of the judge's charge. After the jury had deliberated for less than three hours, they asked the judge to explain again murder in the first degree and murder in the second degree. The judge then repeated his instruction concerning the malice that, he said, was the only form of malice that was an element of murder in the second degree. At this point, defense counsel objected unsuccessfully to the failure to instruct that malice for the purpose of murder in the second degree included an intent to kill and an intent to do grievous bodily harm.[3]

The Commonwealth does not undertake to defend as legally correct the judge's instruction concerning malice. The presence of malice is what makes an unlawful killing murder. There is no distinction between murder in the first degree and murder in the second degree based on a difference in the element of malice.[4] In this case, the judge instructed the jury only on deliberately premeditated malice aforethought as a basis for a conviction of murder in the first degree. He instructed the jury on all three prongs of malice as elements of murder in the first degree. He said that malice aforethought

---

known that, according to common experience, there was a plain and strong likelihood that death would follow from the contemplated act."

[3]The conference at the bench was as follows:

DEFENSE COUNSEL: "Your Honor, am I correct in understanding that the malice for second, as you've instructed it, does not require an intent to kill or an intent to do grievous bodily harm?"

THE JUDGE: "That is right. That is first." ·

DEFENSE COUNSEL: "Your Honor, I realize that perhaps it was also given this morning."

THE JUDGE: "Exactly the same."

DEFENSE COUNSEL: "I think that I now understand, having heard it for the second time. Your Honor, I would request that it be given as the same for first and for second."

[4]The distinction between the two degrees of murder is that murder in· the first degree is a murder committed with deliberate premeditation, or with extreme atrocity or cruelty, or in the commission or attempted commission of a crime punishable with imprisonment for life. See G. L. c. 265, § 1 (1990 ed.). See *Commonwealth* v. *Matchett*, 386 Mass. 492, 502-505 (1982), for a description of those circumstances in which a killing committed in the course of a felony or attempted felony may be murder in the first degree.

"includes any unexcused intent to kill, any unexcused intent to do grievous bodily harm, or any unexcused intent to do an act if there is a plain and strong likelihood that death will follow from that act."[5]

The Commonwealth's reaction to the erroneous charge on malice as an element of murder in the second degree is that the error was harmless beyond a reasonable doubt because, under proper instructions, the jury found the defendant guilty of deliberately premeditated murder in the first degree. The phrase "harmless beyond a reasonable doubt" has Federal constitutional origins. It is not the standard we apply here to an argument not presented as a violation of constitutional rights, and we do not pause to consider whether there is any substantive difference between that Federal standard and the one we apply. Because the judge's error was not the subject of a timely objection, we review the claim of error only pursuant to our obligation under G. L. c. 278, § 33E (1990 ed.), to determine whether there is a substantial likelihood of a miscarriage of justice.

Viewed solely as an instruction on murder in the second degree, the error was not harmful to the defendant. The judge left out two elements on which the jury might have found malice, an omission that, standing alone, did not hurt the defendant. A problem arises, however, when the omission is assessed in the context of the entire charge.

The judge's charge was structured so that, if the jury found beyond a reasonable doubt that the defendant intended to kill the victim or to cause her grievous bodily harm, they could not properly return a verdict of guilty of murder in the second degree, and the only options they had were to find the defendant guilty of murder in the first degree or to find him

---

[5]The judge's statement of the third prong of malice was not as detailed as his statement of that principle in his instruction on malice as an element of murder in the second degree. See note 2 above. The judge's truncated presentation of the third prong of malice does not explicitly set forth the subjective and objective aspects of the third prong of malice.

not guilty.[6] The inducement for the jury to return a verdict of not guilty was nonexistent. Defense counsel had admitted in his opening statement to the jury that the defendant had shot his mother and asked only that a verdict of guilty of manslaughter be returned. To return a verdict realistically acceptable to them if they found the killing to have been intentional, the jury had to find the defendant guilty of murder in the first degree. Thus, in the circumstances, they may have been influenced to find that the defendant acted with deliberate premeditation. The judge's erroneous distinction between malice in murder in the first degree and malice in murder in the second degree did not, however, create a substantial likelihood of a miscarriage of justice. The evidence that the defendant intended to kill his mother was overwhelming. He testified at his first trial that he shot his mother the third time in order to be certain that she died. If the jury found the defendant intended to kill his mother, there is no doubt that he did so with deliberate premeditation.

2. The judge instructed the jury that the issue of the defendant's intoxication was not applicable to proof of the malice that he said must be proved for a conviction of murder in the second degree. In instructing on the third prong of malice as a possible element of murder in the first degree, the judge made no statement about the effects of the defendant's intoxication. The defendant objected to the judge's failure to instruct that, in considering the third prong of malice, the jury could consider any effects of the defendant's consumption of alcohol on the state of mind required under the third prong

---

[6]The judge did give an instruction on voluntary manslaughter, but the evidence did not warrant a finding of voluntary manslaughter. This option existed only nominally, assuming that the jury followed the judge's instructions. The judge declined to give an involuntary manslaughter instruction. We shall return to the question of jury instructions on voluntary and involuntary manslaughter.

of malice. The judge declined to do so, purporting to rely on *Commonwealth* v. *Grey*, 399 Mass. 469 (1987).[7]

Recently, in *Commonwealth* v. *Sama*, 411 Mass. 293 (1991), this court discussed the question whether a jury were entitled to consider evidence of a defendant's intoxication in deciding whether the Commonwealth had proved the knowledge that must be shown under the third prong of malice. *Id.* at 297-299. We held that it was error not to instruct the jury, on request, that they could consider evidence of the defendant's intoxication in deciding whether the Commonwealth had proved the defendant's knowledge of the circumstances beyond a reasonable doubt. *Id.* at 298. This conclusion was the logical extension of our cases holding that a defendant's mental condition and any effects of the consumption of drugs, including alcohol, may be considered whenever the Commonwealth has the burden of proving the defendant's intent or the defendant's knowledge. *Id.* at 297. Although the judge erred in his statement of the law, the error would not require reversal of the defendant's conviction if there was no evidence that the defendant did not know what he was doing at the time of the killing. In the *Sama* case, there was evidence of the defendant's debilitating intoxication bearing on his ability to have meaningful knowledge of the circumstances at the time of the victim's death. *Id.* at 298-299. Here, the evidence favorable to the defendant concerning his state of mind at the time of the shooting is far less substantial. The defendant did not testify at this trial as he had at his first trial.

The only evidence before the jury that arguably tended to show that the defendant did not know that he was carrying a gun when he entered his mother's bedroom and shot her appeared during the cross-examination of the defendant's ex-

---

[7]The *Grey* case concerned a jury charge that erroneously foreclosed consideration of the defendant's mental condition in deciding whether the defendant had the specific intent that is an element of the first and second prongs of malice. *Id.* at 470. That opinion said nothing about the jury's consideration of the effects of the consumption of alcohol or some other drug on the proof of the third prong of malice.

pert, who had based his opinion in part on his review of the defendant's prior testimony. The prosecutor inquired whether the defendant's conflicting stories may have been prompted by his wish to avoid prison and not by his intoxication. The prosecutor read from the transcript of the first trial before asking that question. In the portion that the prosecutor read, the defendant had testified that he did not remember anything about shooting his mother. We do not regard this small portion of the defendant's testimony at his first trial, read at the second trial to the witness on cross-examination to test his opinion, as being evidence before the jury tending to prove the truth of the statement. Moreover, it tells us nothing about what the defendant knew at the time he shot his mother. Other extensive testimony of the defendant read to the jury, as part of the Commonwealth's case-in-chief, shows that in fact at his first trial he remembered in detail what he did and said when he shot his mother. There was no jury issue concerning the effects of alcohol on what the defendant knew at the time he shot his mother, and, therefore, the omission of an instruction on the jury's appropriate consideration of the effects of the consumption of alcohol on the defendant's knowledge was not prejudicial.

We add a suggestion for judges in instructing juries in criminal cases in which there is evidence of the effects of the consumption of a drug or drugs (including alcohol) that, if believed, would be relevant to a defendant's state of mind or knowledge at the time of the alleged commission of a crime. All that we have ever required be said to juries about the effect of drug consumption on a defendant's intent or knowledge would be satisfied by a simple instruction that the jury may consider credible evidence of the effects of the defendant's consumption of drugs in deciding whether the Commonwealth had met its burden of proving the defendant's state of mind beyond a reasonable doubt. Thus, for example, in a case requiring proof of a defendant's intent to do something, the following would be an adequate instruction: Whenever the Commonwealth must prove the defendant's intention to do something, you should consider all the credible evi-

dence relevant to the defendant's intent, including any credible evidence of the effect on the defendant of (his) (her) consumption of (alcohol) (drugs) (alcohol and other drugs).[8]

3. The defendant argues that the judge erred in failing to give an appropriate instruction that would have allowed the jury to return a verdict of guilty of manslaughter. As we have noted, defense counsel made an opening statement to the jury admitting that the defendant had shot his mother and urging the jury to return a verdict of guilty of manslaughter. An instruction on manslaughter is required where any view of the evidence will permit a finding of manslaughter and not murder. See *Commonwealth* v. *Martinez*, 393 Mass. 612, 613-614 (1985).

At the conclusion of the presentation of the Commonwealth's case, the judge stated his belief that there was no evidence that would warrant the giving of a manslaughter instruction. Defense counsel, the prosecutor, and the judge then discussed whether there was any conceivable basis for such a manslaughter instruction.

The judge was correct that the evidence presented no basis for a verdict of voluntary manslaughter. There was no legally adequate provocation, nor were there any mitigating circumstances. The defendant shot the victim three times while she was lying in bed.[9]

The prosecutor suggested that an involuntary manslaughter charge might be appropriate based on the theory of a bat-

---

[8]A similar instruction would be appropriate where the Commonwealth has the burden of proving the defendant's knowledge at a particular time and evidence of drug consumption bears on the defendant's knowledge.

We see no need for a judge to refer to the defendant's *specific* intent to do something as an element of a crime. A reference to intent is sufficient.

[9]The judge did, nevertheless, give an instruction on voluntary manslaughter, although he recognized that the evidence did not warrant it. He did so because of what defense counsel had said in his opening statement, but only after obtaining from the defendant a waiver of any objection to the giving of such an instruction. No issue involving this instruction on voluntary manslaughter is before us, and we do not comment on the enforceability of a defendant's waiver of a challenge to the giving of an unwarranted voluntary manslaughter charge.

tery that caused death. Neither the judge nor defense counsel adopted the suggestion. They were right in not doing so.[10]

The defendant did not explicitly propose an instruction on involuntary manslaughter based on the defendant's wanton and reckless conduct, that is, conduct that caused a death and was undertaken with knowledge of facts that would cause a reasonable person to know that a danger of serious harm existed. See *Commonwealth* v. *Godin*, 374 Mass. 120, 129 (1977), cert. denied, 436 U.S. 917 (1978); *Commonwealth* v. *Welansky*, 316 Mass. 383, 398-399 (1944). He did request instructions that suggest that the effects of alcohol consumption could negate malice and that, if so, the result would be that the defendant would be guilty of manslaughter.[11] The defendant's theory of manslaughter does not conform to any definition of the crime of involuntary manslaughter that this court has endorsed. A killing without malice does not automatically become involuntary manslaughter. The traditional elements of involuntary manslaughter must be shown by evidence that the jury might be-

---

[10]The law of this Commonwealth recognizes unlawful-act manslaughter only if the unlawful act is a battery not amounting to a felony, when the defendant knew or should have known that the battery he was committing endangered human life. See *Commonwealth* v. *Catalina*, 407 Mass. 779, 785, 787 (1990). The battery here was with a dangerous weapon and was a felony. G. L. c. 265, §§ 15A and 15B (1990 ed.). "[T]here was no evidence upon which the jury could find that the defendant[] [was] not engaged in the commission of a felony when the killing occurred." *Commonwealth* v. *LePage*, 352 Mass. 403, 419 (1967).

[11]These requested instructions included the following: "The intentionality of the Defendant's action may be negated by voluntary consumption of alcohol or voluntary intoxication so as to cause the Defendant to disregard the probable harmful consequences of his actions to another so as to constitute wanton or reckless conduct by the Defendant. . . .

"The effects of alcohol consumption or intoxication and/or mental impairment or illness may negate the existence of malice aforethought and the Defendant would be guilty of manslaughter and no more." In support of this latter instruction, defense counsel cited *Commonwealth* v. *Glass*, 401 Mass. 799, 809-810 (1988), and *Commonwealth* v. *Grey*, 399 Mass. 469 (1987).

lieve before an instruction on involuntary manslaughter is required.[12]

We have already said, in discussing the evidence bearing on the defendant's knowledge of what he was doing, that there was no evidence that the defendant did not know that he had a gun that he was firing at his mother. There was no evidence that would have warranted, on the facts that the defendant knew, a finding of a risk of harm less than a strong likelihood of death.[13] Wanton and reckless conduct amounting to involuntary manslaughter was not an available option because, if there was a risk of harm arising from the firing of a gun at a person, it was the kind of risk (likelihood of death) that could only lead to a finding of malice. That is so because the defendant knew facts that a reasonably prudent person would have known, according to common experience, created a plain and strong likelihood that death would follow the act of shooting (third prong of malice). *Commonwealth* v. *Grey*, 399 Mass. 469, 470 n.1 (1987). The evidence, therefore, did not warrant an instruction on involuntary manslaughter.[14]

---

[12]In *Commonwealth* v. *Glass, supra*, we disapproved of a jury instruction that forbade the jury from considering a defendant's voluntary ingestion of drugs in deciding whether he had a specific intent to do something. *Id.* at 810. We said that it was wrong for the judge to say that the voluntary ingestion of drugs could not result in a finding of manslaughter rather than murder. *Id.* We did not, however, redefine involuntary manslaughter.

[13]The defendant does not argue that his statement that he had intended the first shot to miss his mother required an involuntary manslaughter instruction. The omission of any such claim seems correct because the second and third shots were fired at the victim intentionally.

[14]The difference between the elements of the third prong of malice and wanton and reckless conduct amounting to involuntary manslaughter lies in the degree of risk of physical harm that a reasonable person would recognize was created by particular conduct, based on what the defendant knew. The risk for the purposes of the third prong of malice is that there was a plain and strong likelihood of death. See *Commonwealth* v. *Starling*, 382 Mass. 423, 426 (1981); *Commonwealth* v. *Chance*, 174 Mass. 245, 252 (1899). We reject any suggestion that we have made something less than a plain and strong likelihood of death sufficient for proof of the third prong of malice. See *Commonwealth* v. *Sama*, 411 Mass. 293, 297 (1991), which includes "grievous bodily injury" with "death" under the third prong. The risk that will satisfy the standard for wilful and wanton con-

4. The defendant argues that the judge erred in excluding the opinion of the defendant's expert that, on the morning following the shooting, when the defendant made admissions amounting to a confession to police officers, the defendant's judgment and intellectual capacities were impaired as a result of his consumption of alcohol. The defendant makes no claim that his admissions were coerced. This case initially presented a jury question whether the defendant's admissions were voluntarily made, but the issue became of minimal importance in the course of the trial. The question of the voluntariness of the defendant's statements to police officers immediately following the killing became insignificant because of his testimonial admissions at his first trial and his concession at the beginning of his second trial that he had shot his mother. In part 6 of this opinion we shall discuss more fully the reason that the question of the voluntariness of the defendant's admissions became insignificant.

In the course of a voir dire of the defendant's expert, the judge questioned whether the expert's opinion concerning the defendant's state of mind on the morning after the killing, which was largely based on facts that the defendant had provided to him, would be helpful to the jury. The expert's expected testimony could have been viewed as a statement of opinion that the defendant had been telling the truth in describing the amount of alcohol that he had consumed.[15]

---

duct amounting to involuntary manslaughter "involves a high degree of likelihood that substantial harm will result to another." *Commonwealth* v. *Welansky*, 316 Mass. 383, 399 (1944). Our cases have not made any distinction between the third prong of malice and involuntary manslaughter based on the extent of the defendant's knowledge of the facts that created the objectively ascertainable risk. In most of our cases the extent of the defendant's knowledge of the risk-creating facts is not in dispute, but the subjective element is nevertheless a required element of the crime.

Of course, if there is no evidence that the defendant knew facts that a reasonable person would identify as creating at least a danger of serious harm, an instruction on neither involuntary manslaughter nor malice would be warranted.

[15]The defendant's credibility in describing his consumption of alcoholic beverages was not for the expert to resolve. The questions put to the expert

Even if we were to treat the questions as properly phrased and the exclusion of the opinion as error, the omission of the expert's opinion was not prejudicial. The inculpatory information that the defendant gave to police officers, which was admitted at his second trial, added nothing prejudicial to the defendant beyond what was said in that portion of the defendant's testimony at his first trial, held ten months after the killing, that was introduced at his second trial.

5. The judge did not err in excluding portions of the testimony of the defendant at his first trial after the Commonwealth had introduced large parts of the defendant's first trial testimony given on cross-examination. The defendant does not challenge the Commonwealth's introduction of his prior testimony as admissions. See *Commonwealth* v. *Marley*, 396 Mass. 433, 441 (1985). The defendant argues, rather, that the doctrine of verbal completeness required that he be allowed to introduce other portions of his first trial testimony. The defendant argues that his additional testimony set forth his drinking behavior on the day of the killing in detail well beyond that set forth in the testimony that was admitted and that this more comprehensive evidence supported his claim that he did not act with deliberate premeditation or with an intent to kill or to cause grievous bodily injury. The doctrine of verbal completeness is analyzed and discussed in Justice Quirico's thorough opinion in *Commonwealth* v. *Watson*, 377 Mass. 814, 825-834 (1979).

The defendant was entitled to introduce his prior testimony that explained, qualified, contradicted, or illuminated any apparent admission in the testimony that was read to the jury. *Id.* at 827-832. The trial judge carefully analyzed the defendant's prior testimony with counsel. That testimony did not explain any admission the defendant made in his first trial testimony that the Commonwealth introduced nor did it contradict any such admission. Therefore, the judge did not

---

on this point on voir dire did not clearly set forth the hypothetical nature of the premises for the expert's opinion.

err in excluding the defendant's litany of his consumption of alcoholic beverages on the day of the killing.[16]

6. The defendant sought a de novo hearing on his motion to suppress his admissions to police officers. The judge in the first trial had denied the defendant's motion to suppress, and this court upheld the ruling. *Commonwealth* v. *Sires*, 370 Mass. 541, 543-545 (1976). The only argument that the defendant advanced at that time was that he had been denied his Miranda rights. The defendant contended that he had not understood the rights that had been read to him, and hence he did not knowingly waive them. The first trial judge found, on a standard of proof not stated, that the defendant was sober and not confused and that he knowingly, voluntarily, and intelligently waived his rights.

In seeking to renew his motion before the second trial, the defendant asserted the involuntariness of his admissions and confession. He argued, moreover, that the standard for passing on waivers had changed since his first trial from a "heavy burden" of proof on the Commonwealth to proof beyond a reasonable doubt. See *Commonwealth* v. *Day*, 387 Mass. 915, 921 (1983) (Miranda waiver); *Commonwealth* v. *Tavares*, 385 Mass. 140, 152, cert. denied, 457 U.S. 1137 (1982) (voluntariness of confession).[17] The second trial judge denied the defendant a new evidentiary hearing and adopted the original judge's findings, stating without explanation, that they were made on the standard of proof beyond a reasonable doubt.

We conclude that, although the holding of a new hearing on the question of voluntariness would have been preferable, there is no prejudicial error in not having such a hearing.

---

[16]We see no impropriety in the scope of the prosecutor's presentation of the defendant's first trial testimony. The prosecutor did not depart from the judge's ruling.

[17]His memorandum in support of the reversal of the motion did not assert that he had new evidence to offer. At the hearing on the motion he did refer to evidence not presented to the first motion judge. None of this evidence was new in the sense that it was unknown or not reasonably knowable prior to the evidentiary hearing on the first motion.

Seventeen years had passed since the commission of the crime. The transcript of the first hearing on the suppression motion offered as good a record as would the live testimony of the witnesses at a second hearing in 1990. The first judge rejected the defendant's testimony and accepted the testimony of the various police officers. The inference is reasonable that the first judge would have made the same findings if he had used the standard of proof beyond a reasonable doubt, a standard we have not applied retroactively. See *Commonwealth* v. *Dyke*, 394 Mass. 32, 37 (1985).

Although the waiver of Miranda rights and voluntariness present separate issues, they both concern the defendant's state of mind, matters of knowledge, and understanding. Before his first trial, the defendant failed on these factual issues in his challenge to the effectiveness of his apparent waiver of his Miranda rights. Even if we grant that the involuntariness of the defendant's confession could properly be raised so late and after appellate review of the denial of his motion to suppress, we conclude that the treatment the second judge gave to the issue was sufficient to protect the defendant's rights.

The matter of voluntariness was substantially eliminated from the case by the introduction of the admissions that the defendant had made at his first trial.[18] The defendant surely was under no confusion at his first trial from the consumption of alcohol. He was represented by counsel. Any taint from any allegedly involuntary admission had been dissipated. He had had months to reflect on the subject of what had happened on the night of the killing. He then largely corroborated what he had told the police and presented to the jury only the question of his state of mind when he shot his mother. On this point, the statements that the defendant gave to the police about his consumption of alcohol on the day of the killing tended to help the defendant's case.

---

[18]Until this evidence was introduced, voluntariness was a live issue at the trial, as the judge acknowledged.

7. Although the trial was not error-free, particularly in the judge's instruction that malice is different in murder in the second degree than it is in murder in the first degree, we conclude that the conviction should be affirmed. We see no basis for exercising our authority under G. L. c. 278, § 33E (1990 ed.), to grant a new trial or to order that the verdict be reduced. The evidence was overwhelming. The fact of the killing was not in dispute. There was no basis for a verdict of guilty of manslaughter instead of murder. The defendant's own statement given under oath at his first trial provided evidence of deliberate premeditation in a form that could hardly be more explicit or compelling. There is no miscarriage of justice and no error of such proportions as to require a new trial.[19] A third trial held almost twenty years after the killing is not required.

*Judgment affirmed.*

---

[19]The defendant argues that there was a substantial likelihood of a miscarriage of justice because the judge required the defendant to exercise his peremptory challenges after the individual voir dires of each juror. This practice is not in violation of Rule 6 of the Rules of Superior Court (amended, effective April 1, 1989). The subject was within the discretion of the judge, and he did not abuse that discretion.