## COMMONWEALTH vs. KEYMA MACK.

Suffolk. April 3, 1996. - July 25, 1996.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Homicide. Practice, Criminal,* Instructions to jury, Reasonable doubt, View, Capital case. *Evidence,* Consciousness of guilt, Relevancy and materiality, Hearsay.

At a first degree murder trial the judge correctly declined to instruct the jury on involuntary manslaughter where the evidence did not support such a charge. [290]

At a murder trial there was no error in the judge's instructions to the jury on reasonable doubt. [290-291]

At a murder trial the defendant's right to due process was not violated by the judge requiring the defendant to choose between participating in the jury view while confined in a police car some distance away or forgoing any participation. [291]

At a murder trial, the judge properly admitted certain statements of the defendant to the police after his arrest on an unrelated charge, including the use of a false name, to show consciousness of guilt. [291]

There was no merit to a defendant's contention that the judge's refusal to allow him to introduce hearsay evidence violated his right to present a full defense. [292]


INDICTMENT found and returned in the Superior Court Department on January 7, 1993.

The case was tried before *Robert A. Mulligan*, J.

*Scott P. Curtis* for the defendant.

*Jane A. Sullivan*, Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. In December, 1993, a Suffolk County jury convicted the defendant, Keyma Mack, of premeditated murder in the first degree.[1] Testimony came from various police

---

[1]The jury also returned guilty verdicts on one indictment charging unlicensed carrying of a firearm, G. L. c. 269, § 10 (*a*) (1994 ed.), and one indictment charging unlicensed possession of ammunition, G. L. c. 269, § 10 (*h*) (1994 ed.). We consolidate review of those convictions with our statutorily mandated review of the murder charge. See, e.g., *Commonwealth*

officers and investigators, as well as four eyewitnesses to the events surrounding the homicide. On the evidence presented, the jury could have found the following: On March 23, 1992, the defendant and a friend arrived outside a row of stores at the intersection of Fuller and Washington Streets in the Dorchester section of Boston. The victim, Christopher Pires, was standing outside the stores with a group of people. Pires approached the defendant and his friend and started a conversation. That conversation degenerated into an argument among them. After a short time, the defendant pulled out a revolver. Brandishing the weapon, he shouted at Pires several times, "You don't think I'm going to shoot you?" Pires turned and ran. The defendant pursued Pires down the street and around a corner, firing three or four shots in Pires's direction. The defendant gained ground on Pires and shot him in the back from only a few feet away. Pires died within a few minutes.[2]

The defendant appealed and asserts these claims of error: (a) the instruction on reasonable doubt was constitutionally defective, (b) the failure of the judge to instruct on the offense of manslaughter was reversible error, (c) forcing the defendant to choose between appearing in the confines of a police automobile during a view or not going at all violated the defendant's right to due process, (d) admission of evidence of consciousness of guilt was more prejudicial than probative of the defendant's guilt, and (e) the judge's alleged refusal to allow the defendant to call witnesses on his own behalf violated his right to due process.[3] He also asks us to invoke our power under G. L. c. 278, § 33E (1994 ed.), to reduce the murder conviction to murder in the second degree. We conclude there

---

v. *Lawrence,* 404 Mass. 378, 379 n.1 (1989). No argument is exclusively directed at the convictions for the lesser crimes, although several claims (all unsuccessful) apply to them equally with the murder charge.

The judge imposed the mandatory life sentence for the murder conviction and a concurrent sentence of from three to five years on the firearm conviction. The conviction for unlawful possession of ammunition was placed on file with defendant's consent and is not a part of this appeal.

[2]The defendant offered no evidence in his defense.

[3]As to some of these claims of error, no objection was made; hence, the standard of review (assuming error) would be whether there was a substantial likelihood of a miscarriage of justice. G. L. c. 278, § 33E (1994 ed.). *Commonwealth* v. *Fruchtman,* 418 Mass. 8, 20 n.15, cert. denied, 513 U.S. 951 (1994). To simplify matters, we have determined, whether an objection was made or not, there was no error.

was no error, and we see no basis under G. L. c. 278, § 33E, to reduce the murder conviction. Accordingly, we affirm.

1. *Request for manslaughter instruction.* Trial counsel asked for a jury charge as to involuntary manslaughter, a request the judge rejected. A judge must give such an instruction whenever any view of the evidence would permit such a verdict. *Commonwealth* v. *Sires,* 413 Mass. 292, 301 (1992). Counsel contended that the defendant may have only fired the weapon in order to scare the victim.

The evidence, taken most favorably to the defendant, did not support an involuntary manslaughter instruction for the same reasons discussed in *Commonwealth* v. *Sires, supra.* After firing a warning shot into the air, the defendant chased the victim down the street, firing several times, all in the direction of the victim. Cf. *id.* at 303 n.13. Absent some evidence that the defendant's knowledge was impaired,[4] intentionally discharging a firearm in the direction of another person creates a plain and strong likelihood of death. See *id.* at 303 & nn.12, 14. It can support findings under the third prong of malice and hence murder, but not recklessness and manslaughter. There was no error.

2. *Miscellaneous claims.* The defendant's other claims need not detain us long.

(a) There was no error in the jury instructions regarding the standard of proof.[5] Appellate counsel complains that the contrast of "absolute" and "mathematical" certainty with "reasonable doubt" lowered the Commonwealth's burden.

_____

[4]There was some evidence that the defendant smoked marihuana shortly before the killing, but no showing that such had any effect on the defendant's state of mind. See *Commonwealth* v. *Sires,* 413 Mass. 292, 301 (1993).

[5]After reciting from *Commonwealth* v. *Webster,* 5 Cush. 295, 320 (1850), the judge stated:

"Now, the Commonwealth is not required to prove the case to an absolute certainty. The Commonwealth is not required to prove the case to a mathematical certainty. Mathematical certainty is that level of certainty that you will have if you add two and two and arrive at four. The Commonwealth is not required to prove its case to an absolute or mathematical certainty, but it must prove each and every element of the charge beyond a reasonable doubt."

Yet the classic definition found in *Commonwealth* v. *Webster,* 5 Cush. 295, 320 (1850), expressly states that the standard of proof is not one of absolute certainty:

> "This we take to be proof beyond reasonable doubt; because if the law, which mostly depends upon considerations of a moral nature, should go further than this, and require absolute certainty, it would exclude circumstantial evidence altogether."

See *Victor* v. *Nebraska,* 511 U.S. 1, 13-14 (1994) ("beyond a reasonable doubt" is a state of *near* certitude). We have also noted that the concept of reasonable doubt is not a mathematical one, and the judge was entirely correct in so informing the jury. See *Commonwealth* v. *Rosa,* 422 Mass. 18, 28 (1996). We do not require that judges use any particular words to instruct the jury, and here the judge's instruction was an exceptional one. See *Commonwealth* v. *Gagliardi,* 418 Mass. 562, 568 n.3 (1994), cert. denied, 513 U.S. 1091 (1995).

(b) The judge gave the defendant the option of attending the jury's view of the crime scene if the defendant was in a police car and some distance away from the jury. After consultation with trial counsel, the defendant decided not to participate in the view. No objection was lodged. Indeed, a defendant has no right to accompany the jury on their view. See *Commonwealth* v. *Gordon,* 422 Mass. 816, 849 (1996), and cases cited. The defendant concedes as much, and we decline the invitation to overrule a long-standing rule.

(c) The defendant was taken into custody when Springfield police arrested him on a warrant relating to a June, 1992, robbery, wholly unconnected with the March killing of Pires in Boston. After voir dire, the judge ruled that some of the defendant's statements to the Springfield police, including the use of a false name, were admissible to show consciousness of guilt.[6] That decision, determining relevance, was within the judge's discretion. See *Commonwealth* v. *Burke,* 414 Mass. 252, 260-261 (1993). See also *Commonwealth* v. *Hamilton,* 411 Mass. 313, 322 (1991). Which of two crimes caused a defendant to flee or lie is a question going to the weight of the evidence, not its relevance. See *Commonwealth* v. *Burke, supra* at 260.

---

[6]The judge excluded evidence that the defendant tried to avoid arrest for unrelated charges by running away from a Springfield police officer.

(d) Finally, there is no merit to the defendant's contention that the judge's refusal to allow him to introduce hearsay evidence violated his right to present a full defense.

We have reviewed the entire record pursuant to our duty under G. L. c. 278, § 33E. There was no error or reason to reduce the verdict to a lesser degree of guilt.

*Judgments affirmed.*