COMMONWEALTH *vs.* KEVIN P. SULLIVAN.

Middlesex. March 6, 1997. - July 14, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, FRIED, & MARSHALL, JJ.

*Homicide. Malice. Intoxication. Practice, Criminal,* Instructions to jury, Retro-
activity of judicial holding.

On collateral review of a defendant's conviction in 1986 of murder in the
second degree, the defendant was not entitled to the retroactive application
of *Commonwealth* v. *Sama,* 411 Mass. 293 (1991), and the grant of a new
trial; moreover, even if the defendant were so entitled, the omission at his
trial of an instruction allowing the jury to consider evidence of the
defendant's intoxication in deciding whether he acted with malice
aforethought was not prejudicial, where there was no issue before the jury
that the defendant's state of intoxication affected his knowledge of the
circumstances of the homicide. [452-455]

INDICTMENT found and returned in the Superior Court Depart-
ment on January 12, 1983.

A motion for a new trial, filed on November 23, 1993, was
heard by *Robert W. Banks,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*William J. Leahy,* Committee for Public Counsel Services, for
the defendant.

*Catherine E. Sullivan,* Assistant District Attorney, for the
Commonwealth.

MARSHALL, J. Kevin P. Sullivan appeals from the denial of his
motion for a new trial, following his convictions in 1986 of
murder in the second degree and assault and battery by means of
a dangerous weapon. He argues that, in light of our subsequent
holding in *Commonwealth* v. *Sama,* 411 Mass. 293, 298-299
(1991), he is entitled to a new trial because the jury were not
permitted to consider evidence of his intoxication with respect to

the third prong of malice,[1] although he requested an instruction to that effect. We disagree. Even if the rule announced in *Sama* was retroactively applicable to this case, which it is not, the rule would not aid this defendant.

1. On June 20, 1983, a jury convicted the defendant of murder in the second degree and assault and battery by means of a dangerous weapon. His convictions were reversed by the Appeals Court because, in a supplementary charge to the jury, the trial judge erroneously undertook to quantify the concept of reasonable doubt. *Commonwealth* v. *Sullivan*, 20 Mass. App. Ct. 802, 804-807 (1985) (*Sullivan I*). When he was retried in 1986, the defendant again was convicted on both indictments.[2] During his second trial the defendant requested an instruction that would have allowed the jury to consider evidence of his intoxication as it related generally to his malice aforethought, the mental element of the charge of murder.[3] The judge denied his request, and instructed the jury to consider the evidence of the defendant's intoxication on the first two prongs of malice only.[4] The defen-

---

[1] "In Massachusetts, 'malice aforethought may be inferred if, in the circumstances known to the defendant, a reasonably prudent person would have known that according to common experience there was a plain and strong likelihood that death would follow the contemplated act.' *Commonwealth* v. *Grey*, 399 Mass. 469, 470 n.1 (1987). This method of establishing malice aforethought 'is sometimes referred to as the third prong of malice.' *Commonwealth* v. *Moore*, [408 Mass. 117, 134 n.9 (1990)]." *Commonwealth* v. *Sama*, 411 Mass. 293, 296 n.1 (1991).

[2] The defendant received a statutory sentence of life imprisonment for the conviction of murder in the second degree, and a consecutive sentence of from three to five years, suspended for five years, on the conviction of assault and battery by means of a dangerous weapon.

[3] The defendant requested that the judge instruct the jury as follows:

"The jury may consider evidence of the defendant's intoxication at the time of the incident in deciding whether the Commonwealth has proved the element of malice aforethought beyond a reasonable doubt."

[4] The judge instructed the jury as follows:

"Now, a few minutes ago I instructed you that the definition of malice includes an actual intent to kill or, an actual intent to do grievous bodily harm or, an intent to do an act creating a plain or strong likelihood of death or grievous bodily harm.

"The first two of these three aspects of malice requires an actual or specific intent. That is, an actual intent to kill or an actual intent to do

dant objected, arguing that "as a matter of due process the defendant is entitled to have the jury consider his intoxication upon the third prong as well."

On direct appeal from the convictions at his second trial, the Appeals Court concluded that the judge's instructions on intoxication challenged by the defendant were valid, and affirmed the convictions. *Commonwealth* v. *Sullivan*, 29 Mass. App. Ct. 93, 99 (1990) (*Sullivan II*). Subsequently, in 1991, we announced our decision in *Sama, supra*, holding that a defendant is entitled to have the jury consider evidence of his intoxication when deciding whether he acted with malice aforethought under the third prong of malice. In 1993, relying on the rule announced in *Sama*, the defendant filed a motion for a new trial pursuant to Mass. R.

> grievous bodily harm.
>
> "The third does not require an actual or specific intent. And a general intent to do an act creating a plain or [strong] likelihood of death or grievous bodily harm suffices as to that aspect of malice. I go back to this for the purposes of instructing you that in considering whether malice has been proven beyond a reasonable doubt you may consider the evidence the defendant had been drinking or was intoxicated.
>
> "You may consider whether or not that factor had a bearing upon his ability to form a specific intent. His inability to form a specific intent would serve to negate malice under the first two aspects of this element as I have just given it to you.
>
> "The Commonwealth must prove beyond a reasonable doubt the defendant did have a specific intent to kill or to do grievous bodily harm to satisfy the malice requirement of murder based upon either of these two aspects of malice.
>
> "If you find the Commonwealth has proven specific intent beyond a reasonable doubt the defendant's intoxication, if he was intoxicated, does not negate this.
>
> "As to the third aspect of malice, specific intent is not necessary. And the Commonwealth need not show anything but the defendant's general intent based on evidence beyond a reasonable doubt he intended to do an act creating a plain and strong likelihood of death or grievous bodily harm. Intoxication would not bear on that. . . ."

We note that the judge correctly instructed the jury with respect to their consideration of evidence of intoxication on the first two prongs of malice even though the defendant's retrial took place before our decision in *Commonwealth* v. *Grey*, 399 Mass. 469, 470-472 (1987), where we held that evidence of voluntary intoxication may be considered by the jury in assessing a defendant's capacity to form the specific intent required in the first two prongs of malice.

Crim. P. 30 (b), 378 Mass. 900 (1979). In *Commonwealth* v. *Gagliardi*, 418 Mass. 562, 566 (1994), cert. denied, 513 U.S. 1091 (1995), we held that the rule announced in *Sama, supra*, is not to be applied retroactively to cases on collateral review. Relying on that decision, the defendant's motion was denied by a judge in the Superior Court on November 14, 1994. The defendant appealed, and we transferred this case to this court on our own motion.

2. The facts of this case are described in *Sullivan I, supra* at 803:

> "Among the patrons who had been ushering in the new year, 1983, at the Stephen James House in Porter Square, Cambridge, were the victims and the defendant Sullivan. Their celebration had been characterized by ample drinking, particularly on the part of Sullivan. At about 1:45 A.M., Sullivan and his wife emerged from the restaurant arguing, Sullivan resorting to blows and shoves. Grimes and Kelly, who did not know the Sullivans, intervened in what they perceived as a wife-beating episode. There was a fight. Sullivan pulled a knife with which he stabbed Grimes fatally and Kelly much less severely." (Footnote omitted.)

At his initial trial and at his retrial the defendant admitted stabbing Grimes and Kelly and asserted that he acted in defense of himself and his wife. He gave a blow-by-blow account of the fight between himself and the victims.[5]

The defendant argues (as he did on direct appeal) that at his second trial the judge erred by instructing the jury that evidence of his state of intoxication did not bear on the jury's consideration of the third prong of malice; because the jury instructions should

---

[5]It was clear that the defendant was aware of the circumstances of the killing. The defendant described in detail the fight in which he was involved with Grimes and Kelly. For example, he said he was being held to the ground and beaten by those two when he used his knife, swinging it twice at the victims to "get the guys off me so I could help my wife." He said that he had reached around the back of the victim and swung "blindly," that he "didn't see where [he] was stabbing," and that "it didn't feel like the knife went in." The defendant's testimony revealed his knowledge of the participants in the fight, who was located precisely where, the sequence of actions, his exact movements, and his thoughts throughout the incident. That the jury rejected his version of the events, as they plainly did, does not undercut his awareness of the events as they transpired.

have been, but were not, consistent with the rule we subse-
quently articulated in *Sama, supra,* he says that he is now
entitled to a new trial. We disagree. Even were the defendant
entitled to a *Sama* instruction, the omission was not prejudicial
to him.

We established in *Commonwealth* v. *Sama, supra* at 298, that
"[u]nder the third prong of malice, the Commonwealth must
establish the guilty *knowledge* of the defendant beyond a reason-
able doubt, and evidence of a defendant's intoxication should be
considered by the jury" (emphasis in original). In that case, the
defendant "presented credible evidence of debilitating intoxica-
tion bearing on his ability to possess meaningful knowledge of
the circumstances" of the killing. *Sama, supra* at 299.[6] In *Com-
monwealth* v. *Sires,* 413 Mass. 292, 299 (1992), we elaborated
our holding in *Sama,* and said that a *Sama* error would not require
reversal of a defendant's conviction, "if there was no evidence
that the defendant did not know what he was doing at the time of
the killing." In *Commonwealth* v. *Sanna,* 424 Mass. 92, 102
(1997), we explained that "[t]he question is, therefore, whether
there is evidence which would warrant a jury finding that the
defendant was unaware of the circumstances of the homicide at
the time of the act." In short, evidence of intoxication is relevant
only if it concerns the defendant's knowledge of the circum-
stances of the killing; where there is no evidence that due to
intoxication the defendant did not know the circumstances of the
killing, the omission of a *Sama* instruction, although error, would
not constitute prejudicial error.[7] *Commonwealth* v. *Sanna, supra*
at 101-102. See *Commonwealth* v. *Sama, supra* at 298. Here,
there was no issue before the jury that the defendant's state of
intoxication affected his knowledge of the circumstances of the
homicide and any omission of a *Sama* instruction would not have
been prejudicial. See *Commonwealth* v. *Sires,* 413 Mass. 292,

[6]There was evidence that the defendant in *Sama* suffered from uncontrolled
alcoholism, that he was under the influence of both alcohol and drugs at the
time of the killing, that he had no memory of killing the victim, and that he
had no memory of the events surrounding the killing. See *Commonwealth* v.
*Sama,* 411 Mass. 293, 295-296, 299 (1991). Furthermore, an expert witness
testified that the defendant could have hallucinated at the time of the killing
due to the effect of the drugs and the alcohol that he had ingested earlier in
the day. *Id.* at 299.

[7]Our rule giving defendants the right to have instructions permitting the
jury to consider intoxication on the issue of the third prong of malice is not
constitutionally based. *Commonwealth* v. *Sanna,* 424 Mass. 92, 101-102 n.14
(1997).

298-300 (1992) (omission of *Sama* instruction not prejudicial error where defendant gave detailed account of his actions when he shot his mother); *Commonwealth* v. *Delaney*, 418 Mass. 658, 668 (1994) (omission of *Sama* instruction did not give rise to substantial likelihood of miscarriage of justice where defendant knew he was strangling victim, but believed victim was enemy soldier); *Commonwealth* v. *Costa*, 414 Mass. 618, 628 (1993) (omission of *Sama* instruction was not reversible error where evidence "supports the conclusion that the defendant was capable of having the knowledge required").

Furthermore, we determined in *Commonwealth* v. *Gagliardi, supra* at 566, that the new rule announced in *Sama, supra,* would not apply retroactively when raised on a collateral appeal such as here.[8] The defendant does not challenge our holding in *Commonwealth* v. *Gagliardi,* but invites us to recognize a further exception to the rule against the retroactive application of new criminal rules, an exception applicable to those cases on collateral appeal where an issue subsequently resolved as a new criminal rule was raised and preserved by a defendant at trial. We decline to do so.

In *Commonwealth* v. *Bray*, 407 Mass. 296, 299-303 (1990), we followed the Federal rule on the retroactive application of a new criminal rule to a case on collateral review as described by the Supreme Court in *Teague* v. *Lane*, 489 U.S. 288 (1989): where a conviction is final, and the defendant is proceeding with a collateral challenge, new criminal rules "should not be applied retroactively . . . unless they fall within either of two very limited exceptions." *Bray, supra* at 300.[9] As we determined in *Commonwealth* v. *Gagliardi, supra,* the *Sama* rule does not fall

---

[8]In *Commonwealth* v. *Bray*, 407 Mass. 296, 303 (1990), we held that the new rule announced in *Commonwealth* v. *Grey*, 399 Mass. 469 (1987), that a jury may consider a defendant's mental impairment as one factor bearing on malice in murder, was not the type of "bedrock procedural element" that would fall into the second exception described in *Teague* v. *Lane*, 489 U.S. 288 (1989). In *Commonwealth* v. *Gagliardi*, 418 Mass. 562, 566 (1994), cert. denied, 513 U.S. 1091 (1995), citing *Bray, supra,* we said that "[a]s was the case with the rule announced in *Grey, supra* at 471-472, the rule announced in *Sama, supra* at 299, will not be applied retroactively when raised in a collateral appeal."

[9]The first exception applies if the new rule places "certain kinds of primary, private individual conduct beyond the power of the criminal law . . . to proscribe." *Bray, supra* at 300, quoting *Teague, supra* at 311. "The second exception [is] that a new rule should be applied retroactively if it requires the observance of 'those procedures that . . . are implicit in the concept of ordered liberty,' " limited, however, "to those new procedures [of fundamental fairness]

into either exception, and we see no reason to depart from our
decision in *Gagliardi* in this case.

> *Order denying motion for new*
> *trial affirmed.*

without which the likelihood of an accurate conviction is seriously
diminished." *Bray, supra* at 300, quoting *Teague, supra* at 311, 312-313.