After a jury trial in 1995, the defendant, Justin C. Ward, was convicted of murder in the first degree and illegal possession of a firearm. On direct appeal from the murder conviction,[3] the Supreme Judicial Court reduced the conviction to murder in the second degree based on the trial judge's failure to "include[ ] a requested jury instruction on the relevance of the defendant's mental impairment to his ability to engage in deliberate premeditation."[4] Commonwealth v. Ward, 426 Mass. 290, 297 (1997). In 2010, the defendant filed a motion for new trial on the basis of newly discovered evidence that, in an unrelated matter, the Commonwealth's intoxication expert had testified inconsistently with her trial testimony in this matter. The motion for new trial was denied after an evidentiary hearing.[5] The defendant now appeals. We affirm.
Discussion. In reviewing the denial of a motion for new trial, we "examine the motion judge's conclusion only to determine whether there has been a significant error of law or other abuse of discretion." Commonwealth v. Brescia, 471 Mass. 381, 387 (2015), quoting from Commonwealth v. Wright, 469 Mass. 447, 461 (2014). "When, as here, the motion judge did not preside at trial, we defer to that judge's assessment of the credibility of witnesses at the hearing on the new trial motion, but we regard ourselves in as good a position as the motion judge to assess the trial record." Commonwealth v. Hudson, 446 Mass. 709, 714 (2006), quoting from Commonwealth v. Grace, 397 Mass. 303, 307 (1986).
On appeal, the defendant argues that he is entitled to a new trial based on the inconsistent testimony of Nancy Burns, the Commonwealth's intoxication expert at a subsequent hearing in an unrelated case. At trial, the Commonwealth presented evidence that the defendant would drink one-half gallon of alcohol daily and that he was drinking alcohol the night of the killing. Ward, supra at 293 ("At trial, evidence was presented that the defendant was a heavy drinker and had consumed up to one-half a gallon of alcohol a day for many months prior to April 1, 1994"). Nancy Burns, a toxicologist employed by the Department of State Police, office of alcohol testing, testified at Ward's trial that the cognitive functions of an individual with chronic alcohol tolerance would be the least of the body's functions to be affected by alcohol and, after coordination and perception, the last functions to be lost because of drinking. Five years later, in a hearing on an unrelated case, Burns testified essentially to the opposite: that cognitive functions are the first to be affected by alcohol, and that in a chronic tolerant alcoholic, cognitive ability would be more affected than other functions. She testified that an individual's failure to exhibit obvious signs of intoxication does not mean that the person's cognitive functioning is unimpaired. During cross-examination at that hearing, Burns was confronted with her testimony in the case at bar. She then testified that her opinion had changed after Ward's trial based on her reading of additional literature in the field.
To prevail on a motion for new trial on the basis of newly discovered evidence, the defendant must satisfy a two-prong test. First, he must demonstrate that the evidence was unknown and not reasonably discoverable at the time of trial. Commonwealth v. Shuman, 445 Mass. 268, 271 (2005). As the Commonwealth concedes, Burns's subsequent testimony indeed constitutes "newly discovered" evidence, and so this prong is satisfied.
Second, where the new evidence at issue invalidates inculpatory evidence presented at trial, a defendant must demonstrate that the inculpatory evidence "likely was a 'real factor' in the jury's deliberations such that its elimination would cast real doubt on the justice of the defendant's conviction" (emphasis omitted). Commonwealth v. Cowels, 470 Mass. 607, 618 (2015), quoting from Commonwealth v. Sullivan, 469 Mass. 340, 350 (2014). We agree with the motion judge that here, where the defendant conceded manslaughter at trial, the relevant question is whether Burns's testimony on the effects of intoxication would likely have been a real factor in the jury's efforts to distinguish murder in the second degree from involuntary manslaughter. We conclude that it would not have been.
Murder in the second degree is an unlawful killing with malice. Commonwealth v. Sires, 413 Mass. 292, 296 (1992). Involuntary manslaughter is an "unintentional, unlawful killing caused by wanton or reckless conduct." Commonwealth v. Earle, 458 Mass. 341, 347 (2010). "The difference between the elements of the third prong of malice and wanton and reckless conduct amounting to involuntary manslaughter lies in the degree of risk of physical harm that a reasonable person would recognize was created by particular conduct, based on what the defendant knew." Sires, supra at 303 n.14. For purposes of third prong malice a jury must consider whether, "in the circumstances known by the defendant, a reasonably prudent person would have recognized that [his] conduct would create a plain and strong likelihood of death." Commonwealth v. Sama, 411 Mass. 293, 298 (1991). A jury may consider evidence of a defendant's intoxication, as it impacts "the defendant's ability to possess the requisite knowledge of the circumstances in which he acted." Ibid.[6]
"The likelihood of death ensuing when a loaded weapon is aimed at a person ... and then intentionally discharged is plain and strong indeed." Commonwealth v. Iacoviello, 90 Mass. App. Ct. 231, 244 (2016), quoting from Commonwealth v. Alebord, 68 Mass. App. Ct. 1, 7 (2006). "Absent some evidence that the defendant's knowledge was impaired, intentionally discharging a firearm in the direction of another person creates a plain and strong likelihood of death." Commonwealth v. Mack, 423 Mass. 288, 290 (1996) (footnote omitted).
Here, as the motion judge found, there was "abundant evidence" to demonstrate the defendant's knowledge that he was firing a loaded gun in the direction of the victim, and no probability that Burns's testimony would have been a real factor in the jury's deliberations on that point.
As the Supreme Judicial Court summarized on the defendant's direct appeal, the gun in question required "a continuous 'heavy pull' on the trigger to fire; it did not have a hair trigger, and it could not be precocked." Ward, 426 Mass. at 292. After the killing, the gun contained one live round, but no spent shells, "suggesting that the gun had been emptied before the police arrived." Ibid. "Forensic evidence indicated that the gun was at least two to three feet away from the victim when it was fired ...." Ibid. "The evidence also showed that the defendant had a familiarity with guns and had pointed guns at various acquaintances on several occasions in the months prior" to the killing. Id. at 293.
In the hours immediately before the defendant shot the victim, there was evidence that the defendant sought to engage in and did in fact engage in "Russian roulette" gunplay, that he was able to load the gun, and that he responded appropriately and understandably to questions. Id. at 291-292. There also was evidence suggesting that at some point during the evening, the defendant marked his graffiti tag on the walls of the apartment he shared with the victim, as well as on the abdomen of the victim herself, and unloaded the gun. Id. at 293.
Immediately after shooting the victim, the defendant was able to intelligibly seek help from a neighbor and call 911. At the police station where the defendant was detained, he was able to converse lucidly with officers, "behaved calmly, and seemed aware of his circumstances." Id. at 295. Many hours after his initial interview with police, the defendant was interviewed again, and responded consistently with his first interview. Id. at 293.
In short, the overwhelming weight of the evidence at trial suggested that at the time of the shooting, the defendant knew that he was pointing a loaded gun at the victim, and that he was firing it. In light of our "full and reasonable assessment of the trial record," Burns's brief testimony could not have "played an important role in the jury's deliberations and conclusions." Cowels, 470 Mass. at 623, quoting from Commonwealth v. Tucceri, 412 Mass. 401, 414 (1992). Accordingly, the defendant's motion for new trial was properly denied.
Order denying motion for new trial affirmed.

The defendant has not contested his conviction for illegal possession of a firearm.

The reduction was in lieu of granting a new trial, based on the Commonwealth's representation that it would not retry the defendant on the charge of murder in the first degree. Commonwealth v. Ward, 426 Mass. 290, 298 (1997).

We note that the motion judge was not the trial judge.

We note that the jury here were instructed to consider evidence of the defendant's intoxication on the issue of third prong malice.