## COMMONWEALTH *vs.* JOSEPH W. CARPINTO.

No. 93-P-158.

Essex. June 8, 1994. - July 21, 1994.

Present: SMITH, FINE, & IRELAND, JJ.

*Evidence*, Telephone conversation, Sound recording, Voice identification. *Identification.*

Where a recording of a telephone conversation exists and is an accurate representation of what was said, it is admissible for identification of a person speaking thereon upon a showing that the identifying witness is familiar with the speaker's voice. [53-54]

At the trial of complaints for making annoying telephone calls and for threats, the judge correctly admitted in evidence a recording made on a telephone answering machine, where the two witnesses who identified the voice on the recording as that of the defendant demonstrated sufficiently that they were familiar with the defendant's voice, and where the judge's instructions to the jury assured that the contested evidence would be assessed properly and fairly. [54-55]

COMPLAINTS received and sworn to in the Lynn Division of the District Court Department on May 21, 1990.

On transfer to the jury session of the Peabody Division, the case was tried before *Charles J. Hely*, J.

*Wimberley Burton* for the defendant.

*Margaret Perry*, Assistant District Attorney, for the Commonwealth.

SMITH, J. This is an appeal by the defendant from his convictions for making annoying telephone calls in violation of G. L. c. 269, § 14A, and for threatening to commit a crime. See G. L. c. 275, § 2. The jury returned not guilty verdicts on other complaints charging him with threatening to commit a crime and with intimidating a witness. On appeal, the defendant claims that the trial judge committed error in (1) admitting in evidence an audiotape of a telephone call allegedly placed by the defendant and (2) allowing the victim and

the defendant's parole officer to provide testimony identifying the voice on the tape as that of the defendant.

The defendant was an inmate at M.C.I., Concord. The victim worked as a correctional counsellor at M.C.I., Concord, between January, 1984, and March, 1990, and was assigned for about a year and a half to counsel the defendant. The defendant left Concord but returned in 1988. On his return he was not on the victim's list for counseling, and they had little contact with each other.

In March, 1990, the victim left her employment at Concord. On April 10, 1990, she received four telephone calls during the middle of the night from an unidentified male caller. The caller made sexually explicit comments about the victim and threatened to kill her. The victim decided to keep a log, recording the dates, times, and numbers of calls that came in. She also taped the incoming telephone calls on her telephone's answering machine.[1] During the next several weeks she received 156 similar calls, all seeming to be from the same male caller. At that time she could not identify the caller from his voice.

On May 7, 1990, at 2:30 A.M., the victim received a telephone call from the male caller telling her he was going to "rape" and "kill" her. She then notified the police and the telephone company about the telephone calls she had been receiving. The telephone company placed a "tracer" on the victim's telephone line in order to find the location from which the calls were being made.

Once the tracer was placed on the line, the victim would notify the company every time she received a threatening telephone call from the male caller. As a result of the tracer, the telephone company discovered that the calls originated

---

[1]On appeal, the defendant raises for the first time a claim that the recordings should not have been played to the jury because the recordings were an unlawful interception of a wire communication in violation of G. L. c. 272, § 99. We reject the argument in support of the claim because it does not meet the requirements of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). It consists of one sentence, unsupported by citation or articulated reasoning, and we are not obliged to recognize it. *Lolos* v. *Berlin*, 338 Mass. 10, 14 (1958).

from a telephone located in an apartment three or four blocks away from the victim's home. Although the telephone was not listed in the defendant's name, the defendant was named as the billing party on the account. The defendant was on parole at the time of the calls. He was arrested by the police for violation of parole and returned to prison.

On June 16, 1990, the victim received another threatening call from the same male caller. This time the victim heard a distinct metallic reverberation in the background. As a result of her employment at M.C.I., Concord, she recognized the sound to be a prison door shutting.[2]

In July, 1990, the victim, after filing her complaints, went to Lynn District Court for a pretrial conference. She sat in the front row of the visitor's gallery. The defendant was in the prisoner's dock. As other business was being conducted in the courtroom, the defendant called to the victim using her first name, and, in a low whispering voice said, "I didn't do it." This was the first time in several years that the victim had heard the defendant speak in her presence. As soon as she heard the voice, the victim recognized it as the voice of the caller. At trial, the victim and the defendant's parole officer identified the voice on the tape as that of the defendant. The defendant objects to the admission of the tapes and the subsequent identification of the defendant's voice. We affirm.

The defendant states correctly that, before such voice identification evidence may be received, identifying witnesses must establish their testimonial competence by demonstrating that they are adequately familiar with the speaker's voice. According to the defendant, the standard by which such competence is to be judged is set out in *Chartrand* v. *Registrar of Motor Vehicles*, 345 Mass. 321, 325 (1963). In that decision the court stated that a witness is competent to identify a voice over the telephone if the witness (1) is familiar with the caller's voice, (2) identified the voice at the time of the call, and (3) personally heard the conversation. The

---

[2]There was evidence that as of June 16, 1990, the defendant had access to a telephone at M.C.I., Concord. The June 16 telephone call was the basis of the two charges on which the defendant was acquitted.

defendant argues that the first two requirements set out in *Chartrand* have not been met. We hold that in the circumstances of this case *Chartrand* does not control.

*Chartrand* and its progeny, see, e.g., *Commonwealth* v. *Perez*, 411 Mass. 249, 262 (1991), all have dealt with instances in which a witness identified a person's voice heard but not recorded over a telephone line. Here, we are concerned with witnesses identifying a person's voice that has been recorded. There is a substantial difference between voice identification in the context of an ephemeral conversation that cannot be recreated for the witness (or the jury) and the situation in which a witness proposes to identify a voice on a permanent storage medium such as a tape. The latter may be subject to careful study because it can be replayed time and time again. Thus, repeated listening to an audiotape, coupled with subsequent opportunities to hear the caller's voice (the precise situation here), may result in a witness recognizing a previously unrecognized voice. By contrast, it is doubtful that the passage of time is likely to improve the ability of a witness to an unrecorded conversation to recognize a particular caller's voice. Therefore, where a recording of telephone conversations exists (provided it is deemed an accurate representation — a necessary prerequisite for admissibility, see *Commonwealth* v. *Jerome*, 36 Mass. App. Ct. 59, 62 [1994]) a witness may offer identification testimony simply upon a showing that the first prong of the *Chartrand* test is met, i.e., that the witness is familiar with the speaker's voice. See *Commonwealth* v. *Williams*, 8 Mass. App. Ct. 283, 291 (1979).

Here, both the victim and the defendant's parole officer provided sufficient evidence of their familiarity with the defendant's voice for the trial judge to conclude that they would be able to recognize the defendant's voice. Further, the judge in his instructions to the jury accurately described all of the subjective factors that might affect a person's perceptual acuity. See *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 302, 310-311 (1979). Moreover, he instructed the jury on the possibility of a good faith mistake in identifica-

tion. See *Commonwealth* v. *Pressley*, 390 Mass. 617, 619-620 (1983); *Commonwealth* v. *Burgos*, 36 Mass. App. Ct. 903, 904 (1994). There was no error in the admission of any of the contested evidence, and the judge's instructions insured that it would be assessed properly and fairly.

*Judgments affirmed.*