COMMONWEALTH *vs.* RONALD S. TWING
(and three companion cases[1]).

No. 93-P-1753.

Berkshire. February 8, 1995. - August 10, 1995.

Present: DREBEN, GILLERMAN, & LAURENCE, JJ.

*Constitutional Law,* Confrontation of witnesses, Admissions and confessions. *Practice, Criminal,* Severance, Trial of defendants together, Required finding. *Error, Harmless. Assault and Battery by Means of a Dangerous Weapon. Joint Enterprise.*

At a criminal trial, a *Bruton* error was harmless beyond a reasonable doubt, where the Commonwealth's case was strong, the evidence was cumulative of other evidence properly admitted and where the defendant raising the issue had made inculpatory statements himself that were properly admitted. [76-78]

At a criminal trial the judge properly denied the defendant's motion for a severance of trial from his codefendant's on the basis of asserted antagonistic defenses, where no compelling prejudice was demonstrated that prevented the defendant from obtaining a fair trial [78]; further, the defendant did not show that the judge in any other way abused his discretion in refusing to sever the cases [78-79].

At the trial of an indictment for assault and battery with a dangerous weapon, there was sufficient evidence to warrant the defendant's conviction on the theory either that the defendant hit the victim with a hammer or that he engaged in a joint venture to do so. [79-80]

INDICTMENTS found and returned in the Superior Court Department on April 3, 1992.

The cases were tried before *William H. Welch,* J.

*Alicia L. Lenahan* for Ronald S. Twing.

*Richard Passalacqua* for Wayne L. Twing.

*Eric Neyman,* Assistant District Attorney, for the Commonwealth.

---

[1]One of the companion cases is against Ronald S. Twing; the remaining two are against Wayne L. Twing.

DREBEN, J. After a joint trial, the defendants, Ronald and Wayne Twing, were convicted of assault and battery by means of a dangerous weapon (hammer) and assault and battery. The charges arose out of an incident in which the victim, Gerald Major, sustained injuries at Wayne's apartment at a time when Wayne and Ronald were both present. In his appeal, Ronald claims violation of the confrontation clause of the Sixth Amendment to the United States Constitution in the admission of Wayne's statement to detectives that he *and Ronald* had been in a fight with the victim. Ronald also argues that the trial judge abused his discretion in denying his motion to sever his trial from Wayne's. Wayne's appeal asserts error in the denial of his motion for a required finding of not guilty of the assault and battery by means of a dangerous weapon charge. He argues that there was no evidence that he struck the victim ·with a hammer and there was also no evidence to show a joint venture whose intended scope included the use of the hammer. We affirm the convictions of both defendants.

1. *Ronald's appeal.* During the investigation ·of the incident, Wayne made a statement to Detective Glen Decker in which he not only implicated himself but also implicated Ronald. Prior to trial, Ronald's counsel filed a motion in limine to eliminate the reference to Ronald and also filed a motion for severance based on the statement. The prosecution suggested that the statement be redacted to exclude any reference to Ronald. The judge denied the motion to sever and deferred action on the motion in limine. On cross-examination of Detective Decker, Wayne's counsel, over Ronald's objection, elicited Wayne's unredacted statement, which the judge held admissible, but solely against Wayne. See *Commonwealth* v. *Dias*, 405 Mass. 131, 136 n.4 (1989). Neither Ronald nor Wayne testified at trial.

"The United States Supreme Court in *Bruton* v. *United States*, 391 U.S. 123 (1968), held that a codefendant's statement implicating a defendant should not be admitted unless the codefendant testifies at trial and thus is subject to cross-examination." *Commonwealth* v. *Libran*, 405 Mass. 634, 641

(1989). A *Bruton* violation does not, however, require reversal if the error is harmless beyond a reasonable doubt. *Commonwealth* v. *Sinnott*, 399 Mass. 863, 872 (1987). A number of factors deemed important in determining whether the error was harmless — whether the evidence was merely cumulative of evidence properly before the jury, *Commonwealth* v. *Sinnott*, 399 Mass. at 874 n.8, whether there were inculpatory statements made by Ronald himself,[2] *Commonwealth* v. *Bongarzone*, 390 Mass. 326, 345 (1983), and whether the improperly admitted testimony was important to the prosecution's case, *Commonwealth* v. *Libran*, 405 Mass. at 643[3] — lead us to conclude that the error was in this case harmless beyond a reasonable doubt.

On the evening of the incident, according to two witnesses at trial who came to Wayne's apartment after the beating, the apartment was full of blood, both Wayne and Ronald were laughing as they pointed to the blood, and both said they "had beaten up" the victim. When asked where the victim was, both Ronald and Wayne pointed to the blood on the walls and the table. Ronald was reported to have said of the victim "that he was a fat pig and that he splattered." The blood on Ronald's shirt and jeans, both of which were introduced in evidence, was found to be "consistent with having originated from the victim." Also, a hammer containing Ronald's left palm print and left index fingerprint showed blood stains, and, when tested, the blood was consistent with that of the victim. In view of the over-all strength of the Commonwealth's case against Ronald, his own inculpatory statements, and the admission of Wayne's almost identical statements to the two witnesses, cf. *Commonwealth* v. *Brown*, 394 Mass. 510, 515 (1985), there is here no reasonable possibility that Wayne's statement to Detective Decker

---

[2] The United States Supreme Court has held that although inculpatory statements by the defendant will not eliminate a *Bruton* problem they are relevant in determining whether the admission of the codefendant's statement was harmless error. *Cruz* v. *New York*, 481 U.S. 186, 194 (1987).

[3] See *Delaware* v. *Van Arsdall*, 475 U.S. 673, 684 (1986), where the Supreme Court listed a number of factors for appellate courts to consider.

might have contributed to Ronald's convictions. *Commonwealth* v. *Perez*, 411 Mass. 249, 260 (1991).

Ronald also argues that, even if his motion to sever was not compelled under *Bruton*, his motion should have been allowed because each defendant based his defense on shifting blame to the other. *Commonwealth* v. *Moran*, 387 Mass. 644 (1982). In that case the court held that the codefendants' defenses "were mutually antagonistic and irreconcilable," *id.* at 659, that is, "the acceptance of one party's defense [would] preclude the acquittal of the other." *Id.* at 657, quoting from *United States* v. *Ziperstein*, 601 F.2d 281, 285 (7th Cir. 1979), cert. denied, 444 U.S. 1031 (1980). Here, each defendant argued that the Commonwealth had not proved its case against him, and, although each may have suggested that the other was more culpable, this was not a case where the only realistic defense of each consisted in shifting blame to the other.

"Severance is not required because the defendants . . . asserted antagonistic defenses." *Commonwealth* v. *Cunningham*, 405 Mass. 646, 654 (1989). It is only required where the "prejudice resulting from a joint trial is so compelling that it prevents a defendant from obtaining a fair trial." *Ibid.* Where there is no compelling prejudice, there is no requirement of severance "no matter how inconsistent or antagonistic the defenses or trial strategies of the two defendants." *Commonwealth* v. *Cordeiro*, 401 Mass. 843, 853 (1988). Here, the jury were warranted in finding Ronald guilty on the basis of his own properly admitted inculpatory statements and the other strong evidence against him. Wayne's statement that inculpated Ronald was merely cumulative of Ronald's own statement and was in any event admitted through the two witnesses who came to Wayne's apartment shortly after the incident.

Ronald also contends that he was prejudiced by a joint trial, because, in order to protect Wayne's rights, he was not allowed to introduce the victim's extrajudicial statement unequivocally identifying Wayne as his assailant. The statement was excluded as hearsay, and Ronald at trial did not

rely on the exception (excited utterance) he now urges. In any event, he effectively elicited the information that the victim did not identify Ronald as his assailant. Moreover, a defendant is not entitled to severance simply because he "would have had a better chance of acquittal had he been tried alone." *Commonwealth* v. *Smith*, 418 Mass. 120, 129 (1994). In sum, Ronald has not shown that the judge abused his discretion in refusing to sever.

2. *Wayne's appeal.* Wayne claims that his motion for a required finding of not guilty on the charge of assault and battery by means of a dangerous weapon should have been allowed because, although he admittedly beat the victim with his fist, there was insufficient evidence to show that he had hit the victim with a hammer or that he had engaged in a joint venture to do so. We disagree. There was evidence warranting the conviction on both theories.

The kitchen of Wayne's apartment, Wayne's hands and arms, his jeans, and one of his shoes were covered with blood; Ronald, too, was covered with blood. In contrast, the other three individuals who had been at the apartment when the police entered showed no signs of blood. Although the police could only positively identify Ronald's fingerprints on the hammer,[4] there were at least three other bloody fingerprints found on the hammer that were of insufficient detail to make an identification. Since the other occupants of the apartment showed no signs of blood, and the victim denied having been hit by Ronald, the jury were entitled to infer that the only other bloodied person in the apartment, Wayne, was the assailant, and, for the same reasons, that the bloodied unidentified fingerprints on the hammer were those of Wayne. Moreover, although the victim denied that he was hit by Ronald, he testified, "It might have been Wayne." The evidence thus warranted a finding that the victim was beaten with the

---

[4]The victim told one of the police officers that he had been hit with a baseball bat. Since the handle part of the hammer was covered with fresh blood and pieces of hair, the jury were warranted in inferring that the victim had been hit with that part of the hammer, rather than with a baseball bat.

hammer by Wayne. Contrast *Commonwealth* v. *Flynn*, 420 Mass. 810, 815-816 (1995).

There was also sufficient evidence of a joint venture. Wayne and Ronald in their statements to the two witnesses who visited them shortly after the incident repeatedly emphasized the joint nature of their actions. According to these witnesses, Wayne and Ronald were acting as if it were a big joke; they were laughing, and they both said they. "had beaten up" the victim. When asked where the victim was, both Wayne and Ronald pointed to different pools of blood in the apartment saying, "Right there, right there." The jury were warranted in concluding that the defendants' actions and statements after the beating indicated that they were both participants in the assault and battery with a dangerous weapon even if it had been Ronald who had actually struck the blow. See *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980); *Commonwealth* v. *Cohen*, 412 Mass. 375, 380 (1992).

*Judgments affirmed.*