## COMMONWEALTH *vs.* STEPHEN M. DiRENZO
## (and a companion case[1]).

No. 96-P-1200.

Plymouth. May 15, 1997. - December 24, 1997.

Present: WARNER, C.J., KASS, & JACOBS, JJ.

*Homicide. Malice. Practice, Criminal,* Instructions to jury, Voir dire, Collateral estoppel, Severance, Trial of defendants together. *Collateral Estoppel. Joint Enterprise. Evidence,* Joint enterprise.

Evidence at the trial of complaints alleging delinquency by reason of second degree murder was sufficient to warrant conviction of the two defendants on a joint venture theory. [98-99]

At the trial of complaints for delinquency by reason of murder, the judge's erroneous instructions to the jury, defining the third prong of malice by referring to "serious bodily injury," compounded by the prosecutor's adoption in final argument of the erroneous definition, required that the defendants be granted a new trial, where it could not be determined whether the jury had returned verdicts of guilty on the basis of the first or second prongs of malice rather than the third. [99-101] KASS, J., concurring in part and dissenting in part.

At the retrial of complaints for delinquency by reason of murder, the issue of prejudicial publicity is left to the discretion of the trial judge [101]; and findings of no probable cause with respect to separate juvenile proceedings would not, on the record presented, have any collateral estoppel effect with respect to the underlying facts [101].

At the trial of complaints for delinquency by reason of murder on a joint venture theory, there was no error in the judge's refusal to give an incorrect instruction on the proof of the shared state of mind of the element of malice. [101-102]

At the trial of complaints against two juveniles, admission in evidence of an unredacted statement of one juvenile was harmless beyond a reasonable doubt, inasmuch as the statement therein tending to incriminate the other juvenile was merely cumulative of other properly admitted inculpatory evidence. [102]

INDICTMENTS found and returned in the Superior Court Department on April 19, 1994.

---

[1]Commonwealth *vs.* John P. Uminski.

The cases were tried in the Hingham Division of the District Court Department before *Patrick J. Hurley*, J.

*Willie J. Davis* for Stephen M. DiRenzo.

*Richard J. Shea* for John P. Uminski.

*Robert C. Thompson*, Assistant District Attorney, for the Commonwealth.

JACOBS, J. On February 21, 1994, in Rockland, several young men attacked Edward F. Sullivan, Jr., who died from the injuries inflicted. The defendants were indicted for the murder of Sullivan and, being juveniles at the time of the attack, were tried in the Hingham District Court, where they were convicted by a jury of delinquency by reason of second degree murder.[2] The defendants have appealed, raising numerous issues. We reverse the convictions on the ground that the jury were improperly instructed with respect to the malice element in murder.

We summarize the evidence at trial. Early in the evening of February 21, 1994, the defendants were part of a group of six young men who had driven to a bowling alley in Abington. Upon leaving, four of the group, including the defendants, randomly assaulted two men they encountered in the parking lot. Steven James, one of the defendants' group, pursued one of the men while the defendants participated in punching and kicking the other. Shortly thereafter, the defendants' group, driving in one vehicle, met up with three other young men in another vehicle. The nine young men then proceeded to an arcade in Whitman. As they left, Uminski ran up to and took a swing at a man, who was also punched and kicked by James. At the same time, the defendant DiRenzo chased the man's companion. The victims of these incidents in Abington and Whitman were not seriously injured.

---

[2] A judge of the Juvenile Court previously had decided not to transfer the cases. See G. L. c. 119, § 61, as amended through St. 1993, c. 12, § 3, then in effect (repealed by St. 1996, c. 200, § 7). After a bench trial conducted by another judge of the Juvenile Court, both defendants were found guilty of delinquency by reason of second degree murder. They appealed to the juvenile appeals session of the Juvenile Court. See G. L. c. 119, § 56, as amended through St. 1992, c. 379, §§ 17-19.

Each defendant was sentenced pursuant to G. L. c. 119, § 72, as amended through St. 1992, c. 398, §§ 4 & 5, to a maximum confinement of fifteen years, to be served in the custody of the Department of Youth Services until age twenty-one and then of the Department of Correction for the remainder of the sentence. Neither defendant will be eligible for parole until he has served at least ten years of confinement.

The defendants' group then drove in two vehicles to a restaurant in Rockland, where DiRenzo and James began to taunt and swear at Sullivan, who was seated in the driver's seat of a nearby parked van. When Sullivan emerged from the van wielding a baseball bat, DiRenzo yelled to his companions to come to the van. As the members of the defendants' group ran over to the van, Sullivan was standing with his back to the open driver's door waving the bat back and forth. James then was standing in front of Sullivan with his fists up. At that point, Uminski ran around the van and pushed the open door into Sullivan, who fell to the ground, dropping the bat. Various witnesses testified to seeing six to eight males kicking and punching Sullivan. There was evidence that, as Sullivan was stumbling to the ground, DiRenzo ran toward him and started to punch him in the head and that Uminski kicked him in the head and in his midsection. While Sullivan was on the ground, James picked up the bat and hit him with it three times, striking him in the head with "a golf swing type of motion." One witness testified that the group of males near Sullivan continued to beat him while the first two blows with the bat were struck and that they were dispersing when the third blow, the "hardest," was struck. There also was substantial conflicting testimony to the effect that the group was ten to fifteen feet away and backing away from Sullivan and not doing anything to him when James struck the blows with the bat.[3] There was further evidence that Sullivan may have been struck in the head with a liquor bottle and a beer bottle during the attack upon him. Members of the group, including the defendants and James, ran to one of the cars and drove off immediately following the attack on Sullivan. As they drove away, Uminski laughed and said, "They won't fuck with us anymore." One of the group testified that DiRenzo telephoned him the following day and told him "he felt his hand smash through [Sullivan's] skull."[4]

A medical examiner who performed an autopsy on Sullivan's

---

[3]One witness for the Commonwealth testified that when James picked up the bat the others in his group were "sort of backing off" and that when James struck Sullivan twice with the bat those others were leaving and were ten to fifteen feet away. Another Commonwealth witness acknowledged that no one else was "doing anything" to Sullivan when the blows were struck with the bat.

[4]This statement was attributed to DiRenzo by the Commonwealth's principal witness, Maurice Pope, who was one of the group in the car with DiRenzo, Uminski, and James, but was the only person in that vehicle who was not

body testified to finding three distinct lacerations to the head that were consistent with having been struck with a baseball bat. He testified that Sullivan died "as a result of multiple blunt force injuries [to] his head." He also described various recent injuries to Sullivan's head and body that were consistent with being kicked and being struck with a fist and a broken bottle and stated that some of those injuries could result in temporary incapacity.

1. *Sufficiency of the evidence.* We reject the defendants' contention that the judge erred in denying their motions for required findings of not guilty of second degree murder. Viewed in the light most favorable to the Commonwealth, there was sufficient evidence to permit conviction of each of the defendants on the joint venture theory pursued by the Commonwealth. Given the joint participation of the defendants with James in a pattern of random violence in Abington and Whitman shortly before the attack upon Sullivan, the active participation of the defendants and James in taunting, disarming, and attacking Sullivan, and the evidence that the defendants continued to hit and kick him while James struck at least the first two of the three fatal blows, a jury could, without improper speculation, infer that the defendants shared James's specific intent to kill Sullivan or cause him grievous bodily harm while they stood by, in effect aiding and encouraging James in the commission of the crime. See *Commonwealth* v. *Soares*, 377 Mass. 461, 470-472, cert. denied, 444 U.S. 881 (1979); *Commonwealth* v. *Young*, 35 Mass. App. Ct. 427, 435-436 (1993). Alternatively, the jurors could have determined that, in the circumstances known to each of the defendants and independently also known to James, a reasonably prudent person would have appreciated that "according to common experience there was a plain and strong likelihood that death would follow" their joint attack on Sullivan. *Commonwealth* v. *Grey*, 399 Mass. 469, 470 n.1 (1987). See discussion of malice instructions, *infra*. The

charged with respect to the attack on Sullivan. When this statement is considered with the testimony of those who observed the attack, see note 3, *supra*, and the medical evidence, we cannot say the jury would have viewed Pope's testimony as overwhelming on the issue of second prong malice and that they, therefore, would not have considered the third prong as the dissent suggests. Contrast *Commonwealth* v. *Fuller*, 421 Mass. 400, 412 (1995) ("The evidence supporting [the] finding of malice under the first prong is overwhelming. Thus, any errors as to the third prong malice instruction are irrelevant").

evidence therefore was sufficient to support the verdict of second degree murder reached by the jury and a retrial is not prohibited.

2. *The malice instructions.* In his jury instructions on second degree murder, the judge defined the term "malice aforethought" as being met by proof that the defendant (1) specifically intended to kill the victim or (2) specifically intended to cause him grievous bodily injury or (3) "intentionally did an act, and a reasonably prudent person would know that doing such an act under those circumstances as they were known to the accused at the time would create a plain and strong likelihood of causing Edward Sullivan death *or serious bodily injury*" (emphasis supplied). This instruction closely tracked § 5.635 of the Model Instructions for Use in the District Court (1995), entitled "Murder by Juvenile."[5] The inclusion of the words "or serious bodily injury" or like language in the so-called third prong of malice instruction is error.[6] Here, the error was compounded by the prosecutor's adoption of the erroneous definition in his argument to the jury.

Definitional recognition of the third prong of malice can be traced at least as far back as Chief Justice Holmes's pronouncement that "it is possible to commit murder without any actual intent to kill or to do grievous bodily harm, and that, reduced to its lowest terms, malice in murder means knowledge of such circumstances that according to common experience there is a plain and strong likelihood that death will follow the contemplated act . . . ." *Commonwealth* v. *Chance*, 174 Mass. 245, 252 (1899). Notwithstanding frequent and clear reiteration of this definition, the insinuation of "grievous bodily harm" into the description of the third prong occasionally has been reflected

___

[5]This model instruction was issued in June, 1995. The trial took place during April, 1996.

[6]Counsel for DiRenzo specifically objected to the erroneous instruction (on the ground of the inclusion of the serious injury language) after the judge's charge to the jury and was joined by Uminski's counsel in singularly objecting to a repetition of the error in the judge's supplemental instructions. The judge, therefore, adequately was alerted to the error in accordance with Mass. R.Crim.P. 24(b), 378 Mass. 895 (1979), see *Commonwealth* v. *Matos*, 394 Mass. 563, 565 (1985). "The standard of review, therefore, is one of prejudicial error rather than the more difficult standard (from a defendant's point of view) of whether . . . the instructions created a substantial [risk] of a miscarriage of justice." *Commonwealth* v. *Mejia*, 407 Mass. 493, 497 (1990).

in both trial judges' instructions and appellate decisions.[7] The impropriety of the inclusion of "grievous bodily harm" language in third prong instructions squarely was addressed in *Commonwealth* v. *Sires*, 413 Mass. 292, 303 n.14 (1992), where the court stated: "We reject any suggestion that we have made something less than a plain and strong likelihood of death sufficient for proof of the third prong of malice." For purposes of this decision, we equate "serious bodily injury" with "grievous bodily harm" or like language to the extent included in third prong malice instructions.

In *Commonwealth* v. *Fuller*, 421 Mass. 400, 412 (1995), the court again recognized instructional error in the mention of grievous bodily harm in third prong malice instructions and opined that such error might require reversal in the appropriate case. Whether this is such a case depends on whether the error is prejudicial in the sense that the jury reasonably might have been led to convict the defendants of second degree murder relying on evidence that, in the circumstances known to each of them with respect to the joint attack on Sullivan, a reasonable person would conclude that there was a plain and strong likelihood that serious bodily injury would result. Contrasted with the evidence of the defendants' continuing involvement in a joint enterprise with James at the time he struck the fatal blows, there was considerable evidence that they had withdrawn from the attack on Sullivan before James struck him with the bat. Accordingly, the jury may have determined that there was such a withdrawal, but that the defendants nevertheless were guilty of murder because they reasonably should have concluded, prior to their withdrawal, that there was a plain and strong likelihood of serious bodily injury to Sullivan resulting from the joint attack on him by means of fists and feet. We are unable to conclude with certainty that the jury convicted on the basis of the first or second prongs of malice rather than on the basis of the erroneous third prong instruction.[8] Where, as here, "the verdict is supportable on one ground, but not on another, and it is impossible

[7]See, e.g., *Commonwealth* v. *Huot*, 380 Mass. 403, 408 (1980); *Commonwealth* v. *Puleio*, 394 Mass. 101, 108 (1985); *Commonwealth* v. *Sama*, 411 Mass. 293, 298 (1991). See also the trial court instructions quoted in *Commonwealth* v. *Quigley*, 391 Mass. 461, 466 (1984), cert. denied, 471 U.S. 1115 (1985); *Commonwealth* v. *Eagles*, 419 Mass. 825, 835 n.13 (1995); *Commonwealth* v. *Morgan*, 422 Mass. 373, 380 n.7 (1996).

[8]The evidence of likelihood of serious injury also might have supported a manslaughter verdict under the instructions and choices given the jury. See

to tell which ground the jury selected," the verdict must be set aside. *Yates* v. *United States*, 354 U.S. 298, 312 (1957), overruled on other grounds by *Burks* v. *United States*, 437 U.S. 1, 18 (1978). *Commonwealth* v. *Matchett*, 386 Mass. 492, 511 (1982). *Commonwealth* v. *Flynn*, 420 Mass. 810, 818 (1995).

3. *Other arguments.* We address only those arguments of the defendants which may arise upon retrial.[9] Given the passage of time since the death of Sullivan and the trial in April, 1996, individual voir dire of jurors or change of venue may not be required in the event of a retrial, absent a showing pursuant to G. L. c. 234, § 28, of the pervasive effect of the complained of earlier publicity or a demonstration that posttrial events require such measures.

A finding of no probable cause was entered in separate Juvenile Court proceedings with respect to DiRenzo's involvement in the Abington and Whitman incidents. That finding does not, on this record, prevent introduction of evidence of those incidents to the grand jury or in the Commonwealth's case-in-chief based on a theory of collateral estoppel. Collateral estoppel applies to factual issues, not evidence, see *Commonwealth* v. *Woods*, 414 Mass. 343, 353-354, cert. denied, 510 U.S. 815 (1993), and a probable cause determination is not a final judgment. See *Commonwealth* v. *Allain*, 36 Mass. App. Ct. 595, 598 (1994).

The judge did not err in rejecting DiRenzo's request that the jury be instructed: "If the evidence convinces you that the defendant did not know that James *was going to use the bat and strike Sullivan*, then you cannot find that he was a participant in a joint venture to kill Sullivan" (emphasis supplied). Although knowledge that a participant was armed with a weapon may be required in certain circumstances in order to sustain a second degree murder conviction on a joint venture theory, see *Commonwealth* v. *Hennessey*, 17 Mass. App. Ct. 160, 163 (1983), "the requisite shared state of mind of . . . malice can be proved in any suitable way, not limited to proof

---

*Commonwealth* v. *Sires*, 413 Mass. at 303 n.14. Such a verdict may have been rejected in favor of a murder verdict based on the erroneous third prong instruction and the jury's obligation, as instructed, "to return a verdict of [guilty] . . . of the highest crime . . . proved beyond a reasonable doubt." See *Commonwealth* v. *Anderson*, 408 Mass. 803, 808 (1990).

[9]In view of the absence of a transcript of the grand jury proceedings, it is unnecessary that we address the argument that the evidence there presented was insufficient.

of knowledge of a particular weapon." *Commonwealth* v. *Marple*, 26 Mass. App. Ct. 150, 160 (1988). In any event, anticipation that the weapon will be used against the victim is not required.

Following the Commonwealth's offer to redact any reference to DiRenzo in a statement given to the police by Uminski, DiRenzo's motion for severance was denied. At trial, the unredacted statement was offered by Uminski and admitted without objection by DiRenzo. Although DiRenzo's attorney was reminded that DiRenzo was mentioned in the statement before it was read to the jury, the attorney's only reaction was to ask for a limiting instruction, which was given. DiRenzo then renewed his motion for severance. Even if the failure to accept redaction or to object to the admission of the writing did not cure the denial of the motion to sever, see *Commonwealth* v. *Semedo*, 422 Mass. 716, 727-729 (1996), the offending sentence in the statement ("I grabbed the barrel of the bat and Steve DiRenzo started punching the guy in the head") was harmless beyond a reasonable doubt in that it was cumulative of the testimony that DiRenzo had said that "he felt his hand smash through [Sullivan's] skull." See *id.* at 728. See also *Commonwealth* v. *Twing*, 39 Mass. App. Ct. 75, 77 (1995). In any event, if the cases are not severed for retrial, it would be advisable to redact any mention of DiRenzo from the statement.

*Judgments reversed.*

*Verdicts set aside.*

KASS, J. (concurring in part and dissenting in part). I concur with the majority's lucid, compendiously documented, and manifestly desirable restatement of the meaning of malice as an element of murder. In view, however, of the intentional attack on Sullivan and DiRenzo's boast that "he felt his hand smash through [Sullivan's] skull," it strikes me as unrealistic to suppose that the jury would have descended below the second prong of malice, namely, that DiRenzo *intended* to cause Sullivan grievous bodily injury. I would, therefore, affirm the judgments of conviction as to DiRenzo. I concur with the majority as to Uminski.