At their first trial, the defendants were convicted by a jury of delinquency by reason of second degree murder. This court reversed those convictions based upon our conclusion that “[t]he inclusion of the words ‘or serious bodily injury’ or like language in the so-called third prong of malice instruction is error.” Commonwealth v. DiRenzo, 44 Mass. App. Ct. 95, 99 (1997). After retrial in the Juvenile Court, a jury again returned delinquency verdicts of murder in the second degree against both defendants. We reject the defendants’ several claims of error and affirm the judgments of conviction.
1. Sufficiency of the evidence.[2] Viewed in the light most favorable to the Commonwealth, the evidence established that on February 21, 1994, a group of high school students, including the defendants and Steven James, randomly taunted, chased, and battered various other youths, first near a bowling alley in Abington, and later at an arcade in Whitman. The group, now numbering nine, then drove in two cars to a restaurant parking lot in Rockland. There, the defendant DiRenzo started to taunt Edward Sullivan who was seated in a van in the parking lot. Sullivan got out of the van and DiRenzo continued to taunt him. DiRenzo threw a plastic bottle in Sullivan’s direction, then hit his upper body. Sullivan went into the van and came out with a baseball bat. DiRenzo called for the others to come over. They approached Sullivan, who was swinging the bat in front of him, as if to fend them off, but did not swing it at any of them. The defendant Uminski went around the van and slammed the open driver’s door into Sullivan, who stumbled forward, falling to the ground and losing control of the bat. As Sullivan fell, the group closed in on him. James *880 picked up the baseball bat, swung it in the air, and then hit Sullivan in the head with the bat three times. The other youths, including the defendants, were still beating Sullivan while James struck the first two blows with the bat. The defendants, James, and their companions then ran back to their vehicles and left the area. As the group left the scene, Uminski stated, “They won’t fuck with us anymore.” The next day, DiRenzo telephoned one of the group and said that “he felt his hand go through the man’s skull.” In a written statement to the police, Uminski stated he had pushed the van door into Sullivan and kicked him in the head and that he left after James picked up the bat and struck Sullivan’s head.
Sullivan suffered injuries to his hands, knees, hip, elbow, forearm, eyes, forehead, and nose. He also had three distinct areas of bruises on his head, and his skull was massively fractured. Although all of his injuries contributed to his demise, the primary cause of his death was the three blows to the head.
Ignoring the evidence most favorable to the Commonwealth, the defendants focus on other evidence to the effect that their attack on Sullivan had ceased when James picked up the bat and inflicted the fatal blows. This argument simply ignores the established rule that, in the test for sufficiency of the evidence, the evidence is viewed in the light most favorable to the Commonwealth. Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). So viewed, the evidence of malice aforethought, joint venture, and causation amply supports the convictions.
2. Joint venture. Pointing out that Steven James, the wielder of the bat, was convicted in a separate trial of murder in the first degree under the theory of extreme atrocity or cruelty, and claiming that the Commonwealth conceded that the defendants did not act with specific intent to kill, the defendants argue that they therefore could not have shared the same mental state as James and that their convictions under the theory of joint venture were violative of due process. This contention not only is mistaken in its claim of concession, but also incorrectly assumes that the essence of joint venture is a sharing of an identical intent. Here, the jury were instructed that proof of joint venture requires that a defendant must be present at the scene of the crime and have aided or assisted in its commission while “sharing the intent required to commit the crime.” After correctly explaining the three prongs, so-called, of malice, the judge instructed: “The Commonwealth has to prove one of the three prongs of malice against each of the defendants; however, it does not have to be the same prong.” These instructions were correct statements of the law. “[I]t is clear from the language of the test for joint venture that joint venturers need not all share the same intent to be convicted for their participation. ... To sustain a conviction based on a joint venture, the Commonwealth need only show that each defendant shared the mental state required for the crime of which he was convicted, and that he satisfied the other elements of the test for joint venture.” Commonwealth v. Cunningham, 405 Mass. 646, 659 (1989).
3. Other issues, (a) Pursuing an argument preserved at trial, the defendants claim the judge erred by refusing to include the likelihood of death in defining the second prong of malice, which requires “proof that the defendant, without justification or excuse, intended . . . to do the victim grievous bodily harm.” Commonwealth v. Grey, 399 Mass. 469, 470 n.1 (1987). This argument was squarely rejected in Commonwealth v. Reed, 427 Mass. 100, 105 n.4 (1998), *881 where the court observed that adding a “strong likelihood of death” to the definition of grievous bodily injury or harm “would impermissibly intermingle the concepts involved in second prong malice with those governing third prong malice.”
Willie J. Davis (Robert L. Jubinville, Jr., with him) for the defendants.
Robert C. Thompson, Assistant District Attorney, for the Commonwealth.
(b) After the reversal of their convictions in their first trial, the defendants moved to dismiss the charges against them essentially on the grounds that they were then no longer juveniles and that the Juvenile Court, therefore, was without jurisdiction to conduct a retrial. On April 14, 1998, the day their motion was denied, the Supreme Judicial Court, in a case raising a similar issue, held that the charges must be dismissed. Santiago v. Commonwealth, 427 Mass. 298 (1998). Shortly thereafter, the Legislature enacted St. 1998, c. 98, which essentially provides that the Juvenile Court shall have continuing jurisdiction over persons whose cases were properly commenced in that court pending final adjudication of such cases and that its provisions would apply to offenses allegedly committed between December 31, 1991, and September 30, 1996. In Santiago v. Commonwealth, 428 Mass. 39, 40-42, cert, denied, 525 U.S. 1003 (1998), the court held that c. 98 is not an ex post facto law. The defendants argue that the application of c. 98 to their cases is a violation" of due process. Because this claim is not supported by cogent reasoning or citation to authority (and is made for the express purpose of preserving the defendants’ rights to petition a Federal court for a writ of habeas corpus), we deem the argument insufficient and the issue raised to be waived. See Commonwealth v. Elder, 389 Mass. 743, 747 n.9 (1983); Commonwealth v. Carpinto, 37 Mass. App. Ct. 51, 52 n.1 (1994); Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).
(c) The defendants have not demonstrated that the judge abused his discretion in denying their motion under Mass.R.Crim.P. 25(b)(2), 378 Mass. 896 (1979), in which they essentially claim that “an adjudication of manslaughter would be more consonant with justice.” The evidence of malice aforethought on the part of each of the defendants and of their intentional acts contributing to Sullivan’s death amply supports the judge’s decision. See Commonwealth v. McLeod, 394 Mass. 727, 744-745 & n.21, cert, denied sub nom. Aiello v. Massachusetts, 474 U.S. 919 (1985).
(d) The defendants have not demonstrated that any juror improperly consulted a dictionary after the judge delivered instructions not to do so.
The adjudications of delinquency by reason of murder in the second degree are affirmed.

So ordered.

The evidence at the second trial essentially tracked that of the first trial as described in Commonwealth v. DiRenzo, 44 Mass. App. Ct. at 96-98.