COMMONWEALTH *vs.* EDWARD J. CHERUBIN.

No. 01-P-77.

Middlesex. April 10, 2002. - September 13, 2002.

Present: LENK, KASS, & MILLS, JJ.

*Homicide. Practice, Criminal,* Instructions to jury, Waiver. *Malice.*

Discussion of the standard of appellate review of an unpreserved issue presented in a motion for a new trial in a criminal case, after there has been appellate review of the conviction. [839]

On appeal from a defendant's second motion for a new trial in a murder case on the basis that the judge's instructions to the jury with regard to third prong malice were error because of a reference to "grievous bodily injury or harm," and on the basis that counsel was ineffective in failing to challenge those instructions as erroneous, this court concluded that the defendant's claims were not waived, and that the instructions created a substantial risk of a miscarriage of justice, where the instructions misstated the defining element of the crime; where the evidence did not require a finding of malice under the correct definition; where the prosecutor's closing argument expressly invited the jury to proceed under the erroneous definition; and where there was no reasonable tactical basis for counsel's failure to object to a mistaken and unfavorable definition of an element of the crime charged. [838-839, 839-843]

INDICTMENTS found and returned in the Superior Court Department on February 28, 1991.

Following review by this court, 35 Mass. App. Ct. 919 (1993), a motion for a new trial, filed on July 20, 2000, was considered by *Catherine A. White*, J.

*Frank Mondano* (*Maria Luise* with him) for the defendant.

*Lillian Cheng*, Assistant District Attorney, for the Commonwealth.

MILLS, J. On November 26, 1991, a jury convicted the defendant of murder in the second degree (G. L. c. 265, § 1), two counts of leaving the scene of an accident after causing personal injury (G. L. c. 90, § 24[2]), and two counts of assault

and battery by means of a dangerous weapon, specifically an automobile (G. L. c. 265, § 15A). In 1993, the defendant's direct appeal from those convictions and from the denial of his companion motion for judgment notwithstanding the verdict, pursuant to Mass.R.Crim.P. 25(b)(2), 378 Mass. 896 (1979), claiming insufficient evidence, was reviewed under the familiar test of *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979).[1] We held that there was sufficient evidence to sustain the convictions. *Commonwealth* v. *Cherubin*, 35 Mass. App. Ct. 919 (1993).[2]

On July 20, 2000, the defendant filed his second motion for a new trial,[3] challenging only his murder conviction on the basis of error in the jury instructions with respect to the third prong of malice[4] and on alleged ineffective assistance of counsel in failing to object to the instruction. The motion judge, who had also presided at the trial, denied the motion, and this appeal followed.

We are mindful that the defendant did not complain of the erroneous instructions in his first appeal or in his initial motion for new trial and that such new claims must be weighed against the Commonwealth's (and the victim's) interests of finality and the fair and efficient administration of justice. See *Commonwealth* v. *Amirault*, 424 Mass. 618, 636-637 (1997); *Commonwealth* v. *Azar*, 435 Mass. 675 (2002). Nevertheless, we hold that the erroneous instructions created a substantial risk of

---

[1] " '[The] question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' (emphasis in original)." *Commonwealth* v. *Latimore*, 378 Mass. at 677, quoting from *Jackson* v. *Virginia*, 443 U.S. 307 (1979).

[2] The issue of ineffective assistance of counsel on the basis of defense counsel's failure to object to certain cross-examination was raised in the earlier appeal and was rejected by this court. *Commonwealth* v. *Cherubin*, 35 Mass. App. Ct. at 920.

[3] After the notice of appeal was filed in 1991, the defendant moved for a new trial. That first motion for a new trial was denied, and it appears that no appeal was taken from it.

[4] The instruction at issue was that malice includes an "intent to do an act creating a plain and strong likelihood that death or *grievous bodily injury or harm will follow*." There is no dispute that the inclusion of the underlined language constituted error. See, e.g., *Commonwealth* v. *Azar*, 435 Mass. 675 (2002).

a miscarriage of justice and that a new trial on the murder indictment is required.

1. *Background.* On September 16, 1990, from about 8:00 P.M. to 11:00 P.M., the victim, Jody Driscoll, was visiting at John Barrett's Everett apartment, and drank beer with him and some other friends, including Jennifer Ginewicz, Jennifer Fortier, and Kenneth Huntley. At approximately 11:00 P.M., the victim left the apartment, accompanied by Huntley, and approached the defendant, a stranger, who was making a telephone call from a pay telephone in an adjacent parking lot while his girlfriend waited in his 1989 Pontiac Grand Prix automobile. After an acrimonious conversation between them, the defendant appeared annoyed and pushed the victim forcefully away.

The victim returned to the apartment, told her friends what had happened, and quickly went back to the scene of the confrontation accompanied by Ginewicz and Fortier, apparently intending some form of retaliation. Meanwhile, Barrett and Huntley followed at a distance, anticipating a problem and hoping to prevent any further altercation. As the women were crossing a street adjacent to the parking lot, the defendant abruptly drove his car out of the parking lot. The tires screeched as the car turned the corner into the street where the women were crossing. In a brief instant, the defendant aimed the car, swerved, and first struck Ginewicz and then the victim. The defendant left the scene without stopping.

Alfred Porcaro, the driver of another car with three passengers, witnessed the incident and chased the defendant's car into Malden where they forced him to stop. Porcaro exited his car and accused the defendant of leaving the scene after hitting a young woman (the victim). The defendant then redirected his car toward Porcaro and began driving. Porcaro slammed his fist on the hood and was hit on the leg as the defendant drove away from that scene.[5]

The preceding facts were taken from evidence in the light most favorable to the Commonwealth. However, there was substantial evidence that conditioned, modified, and contradicted

---

[5]On the basis of these incidents the defendant was convicted of two counts of assault and battery with a dangerous weapon, his car, on Ginewicz and Porcaro.

the evidence that supported the defendant's conviction. There was testimony indicating or supporting inferences that the defendant swerved rather than aimed the car, grazed the victim rather than directly hit her, and intended or attempted to escape or avoid the victim's and her four companions' threatening or aggressive behavior which included hitting and kicking his car; that the victim was not hit but was pulled under the car when her foot came into contact with a rear tire; and that the defendant obeyed a stop sign at some point during this incident and, hence, was not consistently accelerating. There was little, if any, testimony that the front of the car actually touched the victim.

The testimony was also conflicting as to where the victim and her companions were located at the time of the contact (that is, in the street or on the curb), and as to what part of the defendant's car came in contact with the victim's body: right fender, rear fender, right side, hood, windshield, right front, right rear, side, tire, or any one or more of those, but not all. There was evidence that the victim and her companions moved toward the car as well as evidence of the car moving toward them. There was testimony that the victim was angry when she and her two female friends raced from the apartment to reconfront the defendant and that they were hostile and aggressive in their attitudes and behavior. There was testimony that the defendant attempted to avoid contact with the victim and her companions. Also, there was evidence that the defendant did not aim his car at the victim, but rather drove his car near the victim. There was testimony that the victim and her companions aggressively pursued the defendant's car and hit the windows and side of the car, apparently intending to do some violence toward the occupants. There was evidence that the victim and her companions were intentionally moving in the direction of the car. There was testimony that the car brushed rather than "hit" Ginewicz and that some erratic movement of the defendant's car may have been the consequence of his hitting the curb.

In addition to the explicit conflicts in the testimony, there were also reasons for the jurors to question the credibility, or at least the perception, of the witnesses who were friends of the

victim and had been drinking alcohol together just prior to the incident.[6] There was testimony that the victim, as well as Ginewicz and Fortier, were "buzzed" from drinking beer; that the victim and Ginewicz were both under the legal drinking age, G. L. c. 138, § 34A; and that some of the witnesses attempted to conceal their beer drinking from their parents and the police.[7]

2. *Waiver.* The court's initial inquiry concerns the doctrine of waiver. The motion judge, in denying the second new trial motion, concluded that the defendant already had a fair opportunity to raise the erroneous third prong malice instruction issue and failed to avail himself of it, thereby waiving the claim such that he could not raise it for the first time in his second new trial motion. The judge noted that argument on the defendant's direct appeal occurred almost one year after *Commonwealth* v. *Sires,* 413 Mass. 292, 303 n.14 (1992) ("We reject any suggestion that we have made something less than a plain and strong likelihood of death sufficient for proof of the third prong of malice"). The judge carefully reviewed other cases, both prior and subsequent to *Sires,* and concluded that "the defendant need not have been clairvoyant in order to raise his claim either at trial or on direct appeal," see *Commonwealth* v. *Bowler,* 407 Mass. 304, 308 (1990), and that "[t]he law was sufficiently developed at the time of trial and direct appeal to put the defendant on notice that the inclusion of grievous bodily harm language in an instruction on third prong malice was a live issue." See *Commonwealth* v. *Amirault,* 424 Mass. at 639.[8] Thus, the motion judge found that "the defendant has waived his right to chal-

---

[6]At trial, Huntley testified that the victim "got hit on the passenger side. I see her, and then I didn't see her."

In comparison, it was stipulated that on the morning after the incident, Huntley was interviewed on videotape and stated to the police: "The [defendant] took a right, swerved the car, hit Jody Driscoll, and she went over the hood and rolled up on the windshield a little bit and fell down, and hit her head right on Ferry Street."

The witness told the jury that he did not remember the videotaped interview.

[7]Although Fortier and Barrett were of legal drinking age, they were not legally permitted to provide alcohol to underaged persons. G. L. c. 138, § 34.

[8]In this case, if the law was developed and counsel overlooked it, this would amount to ineffective assistance of appellate counsel on this trial record. If the law was not clearly developed, we may still review the issue if we have a firm conviction that the erroneous instructions created a substantial risk

lenge the instruction on third prong malice." The motion judge then analyzed the erroneous instructions to determine whether they created a substantial risk of a miscarriage of justice. She concluded that "the evidence presented at trial compelled a finding that the defendant's attack was inherently deadly, and the erroneous jury instruction did not create a substantial risk of miscarriage of justice." We disagree.

3. *Standard of review.* Appellate review of an unpreserved issue presented in a motion for new trial, after there has been appellate review of the conviction, is based on whether the error created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Curtis,* 417 Mass. 619, 624 n.4 (1994). *Commonwealth* v. *Azar, supra* at 685-686 & n.7. That standard "requires us to determine 'if we have a serious doubt whether the result of the trial might have been different had the error not been made.' " *Commonwealth* v. *Azar, supra* at 687, quoting from *Commonwealth* v. *LeFave,* 430 Mass. 169, 174 (1999). "We review the evidence and the case as a whole. We consider the strength of the Commonwealth's case, the nature of the error, the significance of the error in the context of the trial, and the possibility that the absence of an objection was the result of a reasonable tactical decision." *Commonwealth* v. *Azar, supra* at 687. See *Commonwealth* v. *Chase,* 433 Mass. 293, 299 (2001). Thus, "whether we view the unpreserved claim of error in the malice instructions directly, utilizing the substantial risk of a miscarriage of justice standard, or indirectly, by focusing on counsel's ineffectiveness in failing to object to the error, our approach is essentially the same . . . ." *Commonwealth* v. *Azar, supra* at 686-687.

4. *Discussion.* This is another in a series of cases where the evidence warranted instructions on the so-called third prong of malice and where erroneous instructions were given without objection — indeed, without any apparent awareness by the parties or the trial judge that the instructions were wrong. See *Commonwealth* v. *Azar, supra* at 683-684. In brief, the defendant was convicted of second degree murder. Malice is an

of a miscarriage of justice. In either circumstance, we accept the issue as properly before us and apply the same standard of review. *Commonwealth* v. *Azar,* 435 Mass. at 686-687, and cases cited.

element of the crime of murder, *Commonwealth* v. *Judge*, 420 Mass. 433, 437 (1995), and it is the element of malice that distinguishes murder from manslaughter. *Commonwealth* v. *Vizcarrondo*, 427 Mass. 392, 396 (1998), *S.C.*, 431 Mass. 360 (2000).

In this case, as in *Azar* (and other cases cited therein), the judge erroneously defined the third prong of malice. Instead of permitting the jury to infer malice "if, in the circumstances known to the defendant, a reasonably prudent person would have known that according to common experience there was a plain and strong likelihood that death would follow the contemplated act[,]" *Commonwealth* v. *Grey*, 399 Mass. 469, 470 n.1 (1987), the judge instructed the jury that malice includes "intent to do an act creating a plain and strong likelihood that death *or grievous bodily injury or harm will follow.*"

It was error to include the phrase "or grievous bodily injury or harm," and it is that same error that has plagued many courts and parties for a considerable period of time. See *Commonwealth* v. *DiRenzo*, 44 Mass. App. Ct. 95, 100 (1997). The judge instructed the jury on second degree murder *and* the lesser included offense of manslaughter. The erroneous instruction was given on four separate instances during the judge's principal charge to the jury after the close of evidence.[9] On the second day of jury deliberations, the jury asked the judge to "redefine the meaning of second degree murder and manslaughter," whereupon the judge repeated the erroneous instruction three additional times. Later that day, the jury requested "another definition of intent that would help us reach a decision regarding [the murder indictment]." The judge then defined intent to the jury without further defining the element of malice. At the end of the day, the jury asked the judge "to define or reread malice aforethought." The following morning, shortly before the jury returned the guilty verdicts, the judge reinstructed the jury on malice, including the erroneous third prong malice instruction. From a reading of the transcript, we are

---

[9]We note that the district attorney, in her closing, told the jury that the judge would be instructing them with respect to the definition of malice, and the district attorney also recited the improper "or grievous bodily harm" language.

concerned that the definitions of second degree murder and manslaughter recited to the jury were not clear and may have caused jury confusion.

From our examination of the entire trial record, with particular attention to the testimony of those who witnessed the incident, we are convinced that there was evidence that, if believed by a properly instructed jury, would have supported a manslaughter conviction. The Commonwealth's theory of the case was that the defendant deliberately aimed the car and drove it at an accelerating speed, failed to stop at a stop sign, and "slammed his car right into [the victim]" and then drove right over her body as she lay on the ground. The prosecutor clearly implied, through her opening argument and questioning of witnesses, that the front of the car directly hit the victim, consistent with the defendant's intentional aiming.

Both the defendant and his fiancée, a passenger in his car, testified at trial. The defendant testified that he just wanted to get out of the area and that he did not intend to hit anyone and did not realize that he had. They both testified that the victim and her companions were banging on the windows and the car. The defendant's fiancée testified that she was terrified.

The jurors were confronted with determining what actions the defendant took while driving his car in relation to the victim. The jurors were eventually instructed to look at the defendant's actions to determine if he intended to (1) cause death; (2) cause grievous bodily harm; or (3) do an act which, in the circumstances known to the defendant, a reasonable person would have known created a plain and strong likelihood that death or grievous bodily injury would result. The jurors were subsequently required to evaluate, from all of the evidence, the degree of risk attributable to the defendant's actions, as pertained to the second degree murder indictment.

The eyewitnesses' testimony unambiguously disclosed the time and place of the incident; the identity of the defendant as the driver; that he drove dangerously, risking the safety of others; that there was some contact between the car and the victim; and that the victim died as a result of that contact. The testimony also seemed to indicate that the defendant was driving over the speed limit; that the defendant did not stop the car after making

contact with the victim; and that the car was moving erratically. The defendant's intent and knowledge could only be inferred from what the witnesses claimed to have seen and then described and from the testimony the defense presented. We have highlighted some of the inconsistencies and conditional aspects of the testimony, *supra.*

It seems that the jury could have reasonably inferred, if properly instructed, that the defendant did not intentionally hit the victim. The jury could also have concluded that the defendant drove the car in a manner that, in circumstances known to the defendant, created a plain and strong likelihood of grievous bodily injury, but not death, despite the fact that death resulted. The jury could also reasonably have concluded that the first group of percipient witnesses (the victim's immediate friends) were each affected by alcohol, were somewhat limited in their ability to perceive, and were, for various reasons, somewhat interested in the outcome of the case. Additionally, the jury could have inferred that the physical movements of the victim and her companions were not predictable because of their alcohol ingestion.

"In other cases, it has not been necessary to order new trials because the evidence in the cases did not warrant a finding of a risk of harm less than a plain and strong likelihood of death. Such cases typically have involved the use of an inherently dangerous weapon, such as a gun, knife, or explosive device, or clear evidence of a prolonged and calculated assault." *Commonwealth* v. *Azar,* 435 Mass. at 687-688, citing *Commonwealth* v. *Mello,* 420 Mass. 375, 390 (1995) (Molotov cocktail); *Commonwealth* v. *Fryar,* 425 Mass. 237, 248, cert. denied, 522 U.S. 1033 (1997) (knife); *Commonwealth* v. *Murphy,* 426 Mass. 395, 401 (1998) (knife); *Commonwealth* v. *Freeman,* 430 Mass. 111, 123 (1999) (knife); *Commonwealth* v. *Caines,* 41 Mass. App. Ct. 812, 817 (1996) (act of strangulation); *Commonwealth* v. *Niland,* 45 Mass. App. Ct. 526, 532 (1998) (gun). Although an automobile may be used as a dangerous weapon, it is not an inherently dangerous weapon. See *Commonwealth* v. *Appleby,* 380 Mass. 296, 303 (1980). See also *Commonwealth* v. *Welch,* 16 Mass. App. Ct. 271, 276 (1983). In this case, the presence of malice, as it is correctly understood, cannot be "ineluctably

inferred" from the evidence. See *Commonwealth* v. *Vizcarrondo*, *supra* at 397.

The jury, properly instructed, could have inferred that the defendant drove his car recklessly while leaving the area quickly. Thus, the jury could have reasonably concluded that the death resulted from a combination of factors, including the defendant's act of driving in a way that he should have known created a plain and strong likelihood that grievous bodily harm, not amounting to death, would result. Compare *Commonwealth* v. *Russell*, 38 Mass. App. Ct. 199, 201-202 (1995), *S.C.*, 54 Mass. App. Ct. 1110 (granting motion for new trial), further appellate review granted, 437 Mass. 1101 (2002).

In view of the erroneous instructions, we have serious concerns that the outcome of the trial might have been different had the error not been made. See *Commonwealth* v. *LeFave*, 430 Mass. at 174. Here, as in *Azar*, "the defining element of the crime was misstated; . . . the evidence did not require a finding of malice under the correct definition; . . . the prosecutor's argument expressly invited the jury to proceed under the erroneous definition; and . . . there is no reasonable tactical basis for a failure to object to a mistaken and unfavorable (to the defendant) definition of an element of the crime[;] . . . there has been a substantial risk of a miscarriage of justice." *Commonwealth* v. *Azar*, *supra* at 689-690. In summary, the evidence could reasonably have warranted a finding of a risk of harm less than a plain and strong likelihood of death. See *Commonwealth* v. *Vizcarrondo*, *supra* at 397.

5. *Conclusion.* The motion for a new trial on the second degree murder indictment should have been granted. The judgment of second degree murder is reversed, and the verdict on that count is set aside.

*So ordered.*